**Bohdan KOZAK**

**v.**

**The UNITED STATES.**

**No. 376–70.**

United States Court of Claims.

April 14, 1972.

Michael Waris, Jr., and Eugene A. Theroux, Washington, D. C., for plaintiff; Baker & McKenzie, Washington, D. C., of counsel.

Thomas E. Thomason, Washington, D. C., with whom was Asst. Atty. Gen. L. Patrick Gray, III, for defendant.

Before DAVIS, Acting Chief Judge, LARAMORE, Senior Judge, COLLINS, SKELTON, NICHOLS, KASHIWA, and KUNZIG, Judges.

ON DEFENDANT'S MOTION AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

KASHIWA, Judge:

Plaintiff, Bohdan Kozak, is a former employee of the Library of Congress who was separated on June 13, 1969, as part of a reduction in force. He claims that the Library failed to enforce his preference retention rights [1] (so-called "bumping rights") by which older, more experienced employees whose positions are abolished can displace more junior employees. Such a violation of its regulations would make his removal wrongful and entitle him to back pay at his former level from June 13, 1969.

We agree that plaintiff's removal was wrongful and that he is entitled to back pay. However, for reasons more fully explained later, we allow relief only up to October 31, 1969. The applicable facts are as follows.

Plaintiff was born in the Ukraine in 1914 and came to the United States in 1949. He became an American citizen in 1954. His education is equivalent to a Bachelor of Arts degree, and he is fluent in the Russian, Polish, Ukrainian, German, and English languages.

[1]. Created by Library of Congress Regulation (LCR) 2021–2, dated March 15, 1955.

On February 15, 1960, he joined the staff of the Library of Congress at grade GS–5, Assistant Bibliographer. By the time of his separation, he had been advanced to grade GS–11 and was assigned as a Subject Cataloguer-Translator to the Monthly Index of Russian Accessions (MIRA), a publication of the Library's Aerospace Technology Division. Throughout his employment, plaintiff was classified as on indefinite status.[2]

In April, 1969, the Library learned of an impending cut in the funds which supported MIRA, among other activities. It was decided to eliminate MIRA entirely (53 employees) and to spread out the remaining reduction in force (78 employees) to minimize disruption. A meeting was held in early May at which everyone in plaintiff's division was advised of the reduction in force and the likelihood that many would be separated. On May 13, 1969, plaintiff received a letter, which was sent to all indefinite status employees on the MIRA staff, saying that he was entitled to consideration ahead of outside applicants for Library-wide vacancies and to "bumping rights" within the Aerospace Technology Division. It closed by advising that, in the event that the Library could not place him in another position, his employment would be terminated on June 13, 1969.

Plaintiff was optimistic that he would be transferred to the Machine Bibliography Unit (MBU), another part of his division, where he had previously worked. But on June 4, 1969, his superior advised him that only eleven MIRA employees were being retained and that plaintiff was not one of them. Feeling that his retention preference rights had been violated, plaintiff wanted to appeal this action. On June 6, 1969, he received a letter reminding him of his appeal rights and giving him five workdays to make his appeal. He made a timely appeal of the separation decision on June 12, but left the Library's service on June 13, 1969.

A hearing on plaintiff's appeal was finally held on April 22 and 23, 1970, before an *ad hoc* board of three Library employees convened pursuant to LCR 2020–3. The Board unanimously agreed that plaintiff's retention preferences had been violated. It recommended to the Librarian of Congress that plaintiff be reinstated to the staff effective June 13, 1969, and that he receive back pay through October 31, 1969, the date when the entire Aerospace Technology Division was abolished.

However, on June 12, 1970, the Librarian disagreed with the Board's recommendation and refused to reinstate plaintiff. He admitted that there were employees in MBU with less service than plaintiff but said that their higher production records coupled with the excessively high displacement that had already occurred in MBU necessitated putting the welfare of the project ahead of plaintiff's retention rights.

Following the Librarian's decision, which exhausted his administrative remedies, plaintiff filed suit in this court on November 2, 1970.

■■■ Plaintiff claims that the Librarian's reversal of the Board recommendation was arbitrary and capricious because it relied upon unofficial records that were not in evidence before the Board. We find this argument to be meritorious and reason enough to render judgment for plaintiff.[3] There is, of course, a presumption that public officials act in good faith in discretionary matters, and it takes strong proof to conclude that their decisions are other-

---

2. In the event of a reduction in force, an indefinite status employee's retention rights are subordinated to those employees on permanent or probational status, and are limited to his division. LCR 2021–2, section 4.

3. Plaintiff asserted other grounds upon which relief could be granted, such as the sufficiency of notice given him and the lack of an opportunity for individual conference with his superior. Though these appear promising, we feel that it is unnecessary to reach them.

wise. Horne v. United States, 419 F.2d 416, 419, 190 Ct.Cl. 145, 150 (1969); Greenway v. United States, 175 Ct.Cl. 350, 362, cert. denied, 385 U.S. 881, 87 S.Ct. 167, 17 L.Ed.2d 108 (1966); Knotts v. United States, 121 F.Supp. 630, 128 Ct.Cl. 489 (1954); Gadsden v. United States, 78 F.Supp. 126, 111 Ct.Cl. 487 (1948). And further, it must be recognized that the Board's opinion was only advisory and that the final determination was up to the Librarian of Congress. LCR 2020–3, § 2. The Board's favorable recommendation that plaintiff should have been transferred to the Machine Bibliography Unit was based, in part, on his prior service in that Unit between 1960 and 1968 and on eight official Library Performance Ratings covering periods from 1960 through 1966, in which plaintiff's performance was rated as "satisfactory," "fully adequate," and "substantially exceeds requirements." The Librarian's decision, on the other hand, relied on a memorandum from plaintiff's division chief, dated June 24, 1969, which justified the failure to transfer plaintiff to MBU on certain records which showed that plaintiff's earlier production of translated documents was below the Unit average. The actual records were never presented to the Board. Nor did the Board receive an explanation of the kinds or lengths of documents that were the subject of these statistics, a matter which the Library's counsel admitted would bear on their meaning.[4] Instead, the Librarian relied solely on the division chief's citation of the quantitative data they allegedly contained. In our opinion, the fact that this data was neither in evidence nor interpreted undermines the basis for the Librarian's decision. And, in addition, testimony before the Board brought out that the memorandum was written *after* plaintiff had been separated.[5] As stated by the Board:

> The Appellant's performance ratings during his tenure in the Library Services Section [MBU] indicate that his work in both quality and quantity and his personal characteristics essential to the position were fully adequate and often exceeded job requirements. This Board was presented with no official record or memorandum dated before June 13, 1969 that suggests the Appellant's production was below average and the Library's Counsel stated that the Library would not argue otherwise. If, as stated in [the division chief's] June 24, 1969 memorandum to [the Assistant Personnel Director], the Appellant's production was below average the possibility exists that his assignments were of such nature that his production would have been affected by them.

In view of these matters, plus the fact that there were no comments adverse to plaintiff in any of the performance ratings, we believe that the Librarian's decision was arbitrary. Plaintiff is entitled to back pay, at his former grade, from June 13, 1969. However, the entire Aerospace Technology Divi-

4. ". . . . The point that [plaintiff's counsel] was making, I think, attempting to make, is an accurate one and for the sake of equity, I think it should be brought out. Numbers must be tempered with size of the document which is going to be translated, or worked with. It may be a lengthy one; it may take time to work it out so that one document may take several hours, where several small ones are naturally a higher number of documents, but were relatively easier to do. So I think that will explain some of this." (Tr. 18).

5. Question: "I notice that there is a memorandum in the material that the Board got, dated June 24th, in which the reason is advanced by [plaintiff's division chief] that his production was low, Mr. Kozak's production was low."

Answer: "Well, we asked for . . . . when we felt that he could possibly displace somebody else because of seniority, not seniority alone, we asked [plaintiff's division chief] to give us a justification as to why they could not bump into the Unit, and that's when we got the justification. That followed our request for it. We requested a considerable number of justifications and they are all in there, if you would like to see them." (Tr. 110).

sion was abolished on October 31, 1969, and plaintiff's "bumping rights" as an indefinite status employee were limited to that division. Consequently, plaintiff's recovery cannot extend beyond that date.

## CONCLUSION

We hold that plaintiff was wrongfully separated from the Library of Congress and is entitled to back pay at his former grade from June 13, 1969, through October 31, 1969. Defendant's motion for summary judgment is denied, plaintiff's cross-motion is granted, and judgment will be entered accordingly. The amount of recovery will be determined pursuant to Rule 131(c).