Alvin L. RASMUSSEN

v.

The UNITED STATES.

No. 121–75.

United States Court of Claims.

Oct. 20, 1976.

James C. Bull, Denver, Colo., atty. of record, for plaintiff. Quiat, Bucholtz & Bull, Denver, Colo., of counsel.

Lawrence S. Smith, Washington, D. C., with whom was Asst. Atty. Gen. Rex E. Lee, Washington, D. C., for defendant.

Before LARAMORE, Senior Judge, and DAVIS and SKELTON, Judges.

## ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

DAVIS, Judge:

This civilian pay case originated in a National Bureau of Standards reduction-in-force which took Alvin Rasmussen, a long-standing employee of the Federal Government, from his GS–13 Physicist position in Colorado and left him in a GS–7 Physicist slot. The focus of the several administrative appeals was Rasmussen's assignment rights under 5 C.F.R. §§ 351.701, 351.703 (1974); the Civil Service Commission had to decide whether Rasmussen was entitled to bump one of two GS–12 Electronics Engineers or whether, instead, he was properly denied those jobs because his placement in either of them would unduly interrupt the work program.

Early in 1973, plaintiff received a specific notice of reduction-in-force, informing him that his GS–13 position was to be abolished and offering him a GS–7 job. Plaintiff at first accepted the GS–7 spot[1] but subsequently appealed the reduction-in-force to the regional office of the Civil Service Commission. Pursuant to Rasmussen's request, the appeals examiner scheduled a personal appearance which agency representatives, plaintiff, and his representative attended. The appeals examiner's decision, against Rasmussen, followed the personal appearance and the parties' submission of further information and responses requested and authorized by the examiner. Rasmussen then appealed to the Civil Service Board of Appeals and Review (BAR), which rescinded the decision of the Region and remanded for more detailed review of plaintiff's qualifications for a GS–12 electronics engineer position. After obtaining a rating of those qualifications through its staffing division, the regional office issued its second decision, which was favorable to plaintiff; the Region found that he could perform the duties of the positions within 90 days and without undue interruption to the activity, and recommended that the agency offer him either of the positions or any other position with a rate of pay of GS–12 for which he was qualified. The agency appealed this decision and the BAR (which became the Appeals Review Board (ARB) during the pendency of this second appeal) reversed, withdrew the recommendation that plaintiff be offered a place at the GS–12 level, and sustained the agency's actions which it found error-free. Plaintiff asked the Commissioners to reopen and reconsider the ARB's decision, and initiated suit here after they denied his request.

It is important to set out in greater detail the administrative treatment of the overriding issue of whether plaintiff could appropriately replace one or the other of the two GS–12 employees whom he was trying to bump. After he accepted the GS–7 job but before he filed his initial application to the Civil Service Commission, his division chief, H. S. Boyne, prepared statements on

---

1. His alternative was separation.

the undue interruption he believed would result from the placement of Rasmussen in either GS–12 slot.[2] After plaintiff filed his Commission application, Boyne wrote memoranda amplifying his earlier statements. These comments were submitted to the Commission's regional appeals examiner, as were additional materials and responses to Rasmussen's written allegations and oral statements made at the personal appearance.

At the personal appearance and in plaintiff's appeal to the BAR after the Region's first, adverse decision, plaintiff's representative stressed a change made in the Federal Personnel Manual (FPM) provisions on reductions-in-force by FPM Letter 351–7:

> In no case, however, does undue interruption mean mere inconvenience. Serious inconvenience and even severe interruption of the work program are often the unavoidable results of reduction in force. Undue interruption, therefore, is a degree of interruption that would prevent the completion of required work within the allowable limits of time and quality. It naturally follows that any finding of undue interruption must be related directly to the nature of the particular work program to be affected. Depending upon the pressures of priorities, deadlines, and other demands, the ordinary work program probably would not be unduly interrupted if optimum quality and quantity of work were not regained within 90 days after a reduction in force. Lower priority programs might tolerate even longer interruption.

Before the BAR, on the first appeal, the employee's representative contended that the Region had ignored the intent of this provision and that the agency had failed to show either that plaintiff could not attain full performance within 90 days or that the program could not tolerate an even longer interruption. In response, the agency noted that Rasmussen and his representative had made the Region aware of FPM Letter 351–7 at the personal appearance, declared that the agency was "most familiar" with the letter and had tried to observe its requirements and intent, and submitted a further statement by Boyne (written after plaintiff had appealed to the BAR) emphasizing the non-ordinary nature of the GS–12 jobs. Boyne also pointed out that there was a difference between regaining optimum performance and achieving merely satisfactory performance, which his previous undue interruption statements had addressed. It was at this juncture that the BAR decided, on the first appeal, to remand for additional investigation.

The agency submitted no new evidence to the Region during the reconsideration of the case.[3] The Region turned to its Staffing Division for advice. That Division reported that an expert examiner in the field had assigned Rasmussen's qualifications for both GS–12 positions a rating of 89, only slightly less than outstanding, and believed Rasmussen could perform the duties at a satisfactory level within a month or two. Upon consideration of the FPM Letter emphasized by plaintiff, *supra*, the agency's representations to the BAR about the non-ordinary nature of the GS–12 work, and the expert examiner's rating, the Region ruled in favor of plaintiff's assignment to one of the GS–12 positions.

Only on the second appeal to the BAR/ARB (*i. e.*, the agency's appeal from the second regional decision) did the agency submit the evidence now challenged. The agency wrote a "brief" alleging several errors in the Region's decision and supplied the Board with two new memoranda, prepared by employees who had not previously

2. Boyne also had certified new position descriptions for those slots. His certifying signature was undated, but the certification by the Personnel Management Specialist bore the same date as plaintiff's notice of reduction-in-force. That was the only date carried by the official position description forms, though the

supplemental pages containing the actual descriptions antedated those forms by about one and one-half months.

3. On the Region's request, the agency resubmitted the position descriptions certified on the

made statements,[4] detailing the work in progress at the time of the reduction-in-force and their views on the undue interruption that would have resulted from Rasmussen's assignment to one of the positions. The Board accepted these memoranda, which the agency termed "additional representations," and included them with the record sent to the Civil Service Commission's Bureau of Recruiting and Examining, Career Service Division, when the Board asked that Division for its opinion on Rasmussen's qualifications for the GS–12 positions. This solicitation of an advisory opinion, which was unfavorable to plaintiff and which the Board quoted almost in its entirety in the final decision against plaintiff, is also challenged here.[5]

■ In appraising plaintiff's contentions, we put aside the claim that it was error for the BAR to receive the additional material from the agency because that material contained evidence as to which plaintiff had the right of cross-examination. A reduction-in-force is not an adverse action to which cross-examination rights attach. *See* 5 C.F.R. §§ 752.103(b)(3), 771.202(b)(3), 772.-301, 772.305(a) (1974); *Wilmot v. United States*, 205 Ct.Cl. 666, 679 (1974); *Fitzgerald v. Hampton*, 152 U.S.App.D.C. 1, 467 F.2d 755, 758, *stayed pending filing of cert. petition*, 409 U.S. 1055, 93 S.Ct. 549, 34 L.Ed.2d 509 (1972), *stay dissolved*, 409 U.S. 1100, 93 S.Ct. 888, 34 L.Ed.2d 682 (1973).[6] Plaintiff neither had a right to nor received a trial-type hearing; at the regional level he was given only a personal appearance, which differs markedly from a full hearing and does not carry cross-examination with it. *See Grover v. United States*, 200 Ct.Cl. 337, 349–51 (1973).

■ We do, however, find merit in the allegation that the Board exceeded its scope of review when it considered the agency's newly presented additional evidence and the advisory opinion based thereon. The regulation governing the Board's proceedings required it to *review* the record and relevant written representations.[7] The plain and ordinary meaning of "review" is "to examine again," and the reference to the "record of the proceedings" assumes a preexisting record. The Board could not examine *again* evidence not previously examined by the Region, and not already in the record. *Cf. United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 714–15, 717, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963); *Chandler v. Roudebush*, 425 U.S. 840, 96 S.Ct. 1949, 1958–61, 48 L.Ed.2d 416, decided June 1, 1976. Apparently, the Board agreed with this interpretation of the regulation, for it began its "Analysis and Findings" with this sentence: "The Board has fully reviewed the appellate record developed and relied upon by the Denver Regional Office to determine whether, in light of the representations to the Board, the Region was correct in concluding that appellee was not afforded a reasonable offer of assignment." The difficulty is that the Board did not restrict itself to review of the record "developed and relied upon by the Denver Regional Office" but had before it (and placed before the other Civil Service division to which it turned for advice) significant factual materials that were not part of the Region's record.

Amendments to the regulations—which became effective before the Board handed down its decision but after all other administrative action, including receipt of the ad-

same date as plaintiff's reduction-in-force notice. *See* note 2 *supra*.

4. One was written by the person who had been plaintiff's immediate supervisor at the time of the reduction-in-force.

5. The Board provided plaintiff with copies of the agency's additional evidence and the Bureau's advisory opinion and gave him the opportunity to comment on them in writing.

6. Full hearing rights may attach if the reduction-in-force is but a disguised dismissal for reasons personal to the released employee. *See Fitzgerald v. Hampton, supra,* at 758–60; *cf. Keener v. United States,* 165 Ct.Cl. 334, 338–39 (1964); *Ritter v. Strauss,* 104 U.S.App. D.C. 301, 261 F.2d 767 (1958).

7. 5 C.F.R. § 772.307(b) (1974) states that "[t]he Board of Appeals and Review shall review the record of the proceedings and all relevant written representations."

visory opinion, had occurred—strengthen our view of the proper interpretation of the Board's then authority. Those amendments retain the "shall review the record of the proceedings and all written representations" language (5 C.F.R. § 772.310(g) (1975)) and add several paragraphs requiring both parties to submit all their evidence at the regional level. 5 C.F.R. § 772.305(a) (1975) provides: "Statements of witnesses shall be by affidavit, when practicable, and relative to the adverse decision. It is the responsibility of both parties to the appeal to submit all evidence · to the appropriate office of the Appeals Authority [the initial Civil Service Commission level, corresponding to the former regional office] having jurisdiction."[8] A new section 772.308, captioned "Closing the record," states: "The Appeals Authority shall close the record in any case after the parties to the appeal have had a full opportunity to present any and all relevant and material evidence. * * * When the record is closed there is no right to submit additional evidence into the record." The regulations authorize the Appeals Review Board to receive evidence not considered by the Appeals Authority only where the party proffering the evidence makes a showing that the evidence is "new," *i. e.,* that it was not readily available when the appeals officer's decision was rendered. 5 C.F.R. § 772.310 (1975). There is no assertion here that the agency's additional evidence, consisting of statements about the situation existing at the time of the RIF and written by employees who were employees at the time of the RIF, was new evidence not readily available at the time of the second regional decision.

Under the new regulations it is clear that the agency could not have submitted (and the Board could not have considered) the additional evidence. These regulations do not directly govern the case because they became effective too late in the proceedings and were part of a reorganization that made the Appeals Authority's decisions final and converted the Appeals Review Board's function to a discretionary review from an "appeal as of right." However, they do show that the Civil Service Commission deemed preclusion of a party's submission of additional evidence to the appellate tribunal as harmonious with the basic requirement that the Board "review the record of the proceedings and all written representations." We regard the new regulations as spelling out what was implicit in the former requirement.

This reading of the limitations on the Board's power to receive new evidence—under the former as well as the current regulations—has a triple impact. First, it serves to assure that, if an appeal is taken and allowed, two levels of the Civil Service Commission dissect and evaluate all the evidence, and in that way furthers the objective of careful, thorough, and impartial fact-finding. Second, and perhaps more important, the restriction of the appellate Board to the record made at the first level impels the parties to present their materials at that stage rather than, as was true of the Government in this instance, trying to shore up the record by belated and piecemeal additions after suffering failure at the initial level. *Cf. Western Shoshone Legal Defense & Educ. Ass'n v. United States,* 531 F.2d 495, 499–500, 502–03, 209 Ct.Cl. 43, 52–53, 57–59 (1976). Third, in forcing the parties to supply all factual information to the Region, so far as possible, the limitation on the Board gives substance to the practice of granting the employee a personal appearance at that time (if requested).[9] This personal appearance is the substitute for a full trial-type hearing and is the best opportunity the employee has to answer the case presented by his employing agency. A

8. The subsection which had limited the applicability of this section was removed, so the provision now governs reduction-in-force appeals.

9. The regulations and the Federal Personnel Manual were silent on the matter of a personal appearance at the Commission's regional level for an employee contesting his reassignment after a reduction-in-force. However, plaintiff's simple request for such a hearing was granted without question, and it appears to have been the normal practice to accord such an appearance if sought.

grave dilution of the employee's opportunity to discuss and comment on the evidence results if significant material is withheld until the Board level.[10]

For these reasons, we base our decision on this error of accepting and acting on new evidence at the Board level.[11] *Cf. Kozak v. United States,* 458 F.2d 39, 198 Ct.Cl. 31 (1972) (plaintiff claimed that Librarian's reversal of board's recommendation was arbitrary and capricious because he relied on a memorandum based on unofficial records not in evidence before board; court found argument meritorious and reason to enter judgment for plaintiff, especially in light of fact that the key memorandum was written after plaintiff's separation).[12] The Board should have excluded the additional evidence or remanded it for full consideration by the Region.[13]

This holding does not preclude parties to Board proceedings from making arguments expressing their views of the applicable law or interpretations of the evidence. This they may do, just as they may before an appellate court. However, the agency submissions at issue here included factual evidence of the type that would cry out for cross-examination and counter-testimony in an administrative hearing or court trial—allegations of fact about the duties and

projects of the employees plaintiff sought to displace and about his ability to perform their functions. Even though a trial-type hearing was not available in this instance, plaintiff should have had the chance to deal with this added material at a personal appearance or to produce other evidence to the contrary. Evidence of this type should be placed before the initial decider (unless, perhaps, it cannot be obtained or is undiscovered at that time), not produced after the record is made and then accepted by an appellate board as the basis for reversal on appeal. *Cf. Kozak v. United States, supra.* In *Vogt v. United States,* 150 Ct.Cl. 636 (1960), the court held that a regulation requiring the Commission appeals examiner to discuss with the parties and to make available for their consideration all relevant representations applied only to representations of fact, not to interpretations of law. *Id.* at 640. Similarly, here the "representations" that the Board may consider initially are legal arguments, while the "representations" it "shall review" (rather than consider initially) are representations of fact.

The determination that the agency could not give the Board and the Board could not accept and consider evidence that could and should have been produced before the regional appeals examiner places no unfair or

---

10. The regulations provide (5 C.F.R. § 772.-307(b) (1974); *id.* § 772.310(f) (1975)) that there is no right to a hearing before the Board and that the Board has discretion whether or not to allow a personal appearance and the presentation of oral arguments and representations. These provisions make it all the more important that the full factual record be made below, not at the appellate step.

11. We think that plaintiff sufficiently raised this point at the Board level, considering that he was not there represented by a lawyer but by himself and by union officials. He expressly challenged the right of the Board to obtain its own advisory opinion (which was based on the new evidence) and, more obliquely, referred to "the fact that NBS [National Bureau of Standards] then proceeded to circumvent the examiner's opinion" after the second regional decision.

12. We note that all of the undue interruption statements in Mr. Rasmussen's case were written after his notice of reduction-in-force and offer of the GS-7 assignment. The decisive

memoranda were written over a year after that date.

13. In two civilian pay cases, both involving dismissals and the procedures applicable to such personnel actions, the court has considered allegations that new evidence was improperly admitted at an appellate level. In *Shadrick v. United States,* 151 Ct.Cl. 408 (1960), the court did not decide the new evidence issue because the alleged evidence (given to the Commissioners) contained new charges against the plaintiff, and the court held that the addition of new charges violated plaintiff's rights. *Id.* at 430–33. In *Atkinson v. United States,* 144 Ct.Cl. 585 (1959), the court concluded that the Board's consideration of new evidence was in accord with the regulation's provision allowing such consideration under certain circumstances. *Id.* at 600. These cases therefore do not guide us; their different factual premises and governing regulations distinguish them.

unforeseeable burden on the employer. The regulations and the Federal Personnel Manual put the agency on notice that it had to evaluate plaintiff's assignment rights, and the potential undue interruption if he were given one of the GS–12 posts, before it gave plaintiff his notice stating that a GS–7 position was the most reasonable offer it could make. 5 C.F.R. §§ 351.603, 351.701, 351.703 (1974); Federal Personnel Manual ch. 351, §§ 7–3, 7–4, 7–6. And as the agency itself stressed in its letter responding to plaintiff's appeal of the first regional decision, Rasmussen and his representative had brought FPM Letter 351–7 to the appeals examiner's (and the agency's) attention during that first regional consideration, and the agency was "most familiar" with and had tried to implement that letter.[14] Thus, the agency knew long before the Region issued its second decision, and even before it issued its first, that the agency needed to confront the issues raised by the letter.[15] Those questions had become paramount by the time the Board remanded for a second regional consideration, and once the plaintiff had made a strong showing that he fell within the 90 days specified in the letter, the burden fell on the agency to rebut the showing or to demonstrate the irrelevance of the ordinarily applicable 90-day guideline. Yet, the agency chose not to provide the Region with any further evidence during its consideration on remand. At that time the agency apparently thought, incorrectly, that "undue interruption" was a magic phrase it could invoke, conclusorily, to stave off an adverse ruling despite the strength of plaintiff's evidence, weakness in the agency's, and the spirit of FPM Letter 351–7.

█ We are mindful, of course, that a procedural error for improperly admitted evidence or for consideration of evidence outside the record will not normally be controlling if the plaintiff did not suffer substantial prejudice. *See Charley v. United States,* 208 Ct.Cl. 457, 472 (Dec. 1975); *Haynes v. United States,* 418 F.2d 1380, 1383–84, 190 Ct.Cl. 9, 14–15 (1969); *United States v. Pierce Auto Freight Lines, Inc.,* 327 U.S. 515, 529–30, 66 S.Ct. 687, 90 L.Ed. 821 (1946). In this case the injury is apparent. The advisory opinion from the Career Service Division, which the Board quoted extensively, stated that the Division believed Rasmussen's experience "would ordinarily enable" him "to perform the full duties of position # 3–9018 [one of the two GS–12 jobs] with minimal training." But the opinion continued with "However," a litany of facts that could only have been drawn from the agency's additional evidence, first presented at the appellate stage, and the conclusion that undue interruption would result from plaintiff's assignment to the position. In other words, the Career Service Division would have advised that plaintiff was qualified for and entitled to one of the two positions sought but for the additional evidence accepted by the Board and given the Division with the rest of the record compiled below. The Board gave great weight to this advisory opinion and did not disclaim reliance on the additional evidence. *Cf. Charley v. United*

---

**14.** The relevant provision of FPM Letter 351–7 *now appears in section 4–3.b. of chapter 351 in* the Federal Personnel Manual. This provision is in the subchapter covering the agency's determination of competitive level and the scope of "first-round" competition (subchapter 4), not in the subchapter dealing with assignment rights, or "second-round" competition, arising after the agency has reached an employee for release from his competitive level (subchapter 7). *See* FPM ch. 351, subchs. 4, 7; 5 C.F.R. §§ 351.401–.404, 351.601–.603, 351.701, 351.703 (1974). However, the parties have treated the provision as applicable throughout the administrative and court proceedings, and its amplification of "undue interruption" in one context certainly is pertinent in the other, which involves similar factors and requires consideration of undue interruption. *Compare* 5 C.F.R. § 351.403 (1974) *with id.* § 351.701.

**15.** The letter contained these phrases which plaintiff has treated as pivotal:

"In no case, however, does undue interruption mean mere inconvenience. * * * [T]he ordinary work program probably would not be unduly interrupted if optimum quality and quantity of work were not regained within 90 days after a reduction in force. Lower priority programs might tolerate even longer interruption."

*States, supra,* at 472–73. We can only conclude—from these factors and the Board's cryptic statements that it had considered all pertinent information and reviewed the appellate file and that it found plaintiff's experience and training insufficient for both positions (with no precise explanation of the respects in which his experience was insufficient) without undue interruption—that the Board, like the Career Service Division, relied squarely on the additional evidence when it decided to reverse the Region's decision.[16] It was, in a word, this late material which caused the Board to overturn the Region's determination in favor of Rasmussen.

Moreover, the evidence, including that considered improperly at the Board level, leaves the issue of undue interruption a very close one (even from the agency's point of view). This is not a situation in which the belatedly admitted material proves conclusively that the agency was right and that no other determination could have been made. If plaintiff had had an opportunity to discuss the additional material at his personal appearance before the Region, and perhaps to obtain at that time some further evidence in his own behalf, he might have been able to persuade the Region and the Board that he was correct. The right before the Board to comment on the new information in writing was not the equivalent of the opportunity at the regional level for a personal appearance and the more expansive right, as a practical matter, to introduce evidence at that point in the proceedings. Since the evidence as a whole is so much in balance, violation of these procedural rights takes on a special importance.[17]

■ Because we have determined that the Board violated a procedural regulation to the plaintiff's detriment, we need not resolve the issue of whether on the merits there was substantial evidence to support the Board's ultimate result.[18] The major procedural lapse vitiated the Board's decision. This in turn invalidated the plaintiff's reduction-in-force since his reassignment rights were an integral part of that reduction. The same notice which told him that his position was to be abolished also informed him as to the post (*i. e.* the GS–7 slot) to which the agency believed him entitled under Civil Service regulations; and those regulations imposed on the agency specified assignment and "bumping" steps in connection with the reduction-in-force (5 C.F.R. §§ 351.603, 351.701, 351.703 (1974)), as well as the procedural steps the employee could take to vindicate his rights. These assignment rights were as important as, perhaps more important than, the validity of the abolishment of the GS–13 job itself. Thus, the failure to accord plaintiff a significant procedural right means that the reduction-in-force cannot be enforced. *Cf. Kozak v. United States, supra,* 458 F.2d 39, 198 Ct.Cl. 31 (1972); *Newman v. United States,* 143 Ct. Cl. 784, 798–99 (1958); *Baxter v. United States,* 136 F.Supp. 748, 129

---

16. That the Board relied heavily on the factual material first presented on the second appeal is also shown by its decision, on the first appeal, that the case required further ventilation by the Region. As we have pointed out, the agency presented no significant new material to the Region after the remand but rested on the record already made. The only addition to that record on remand was the advisory opinion favorable to Rasmussen which the Region obtained from its staffing division. Thus, in the absence of the new agency submissions during the second appeal, the Board would have had before it only the record which it believed necessitated remand on the first appeal and an advisory opinion favorable to plaintiff and contrary to the Board's final decision.

17. In *Rifkin v. United States,* 209 Ct.Cl. 566, 592–94 (Apr. 1976) the court held it sufficient that the employee was given the opportunity to respond in writing, at the Secretarial level, to certain *ex parte* communications on behalf of the employer, but there the new factual material contained in the communications was collateral to the main issue in the case and primarily concerned the penalty rather than the dereliction charged. *Cf. Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). Here, the new facts went to the very heart of the substantive issue.

18. Nor need we consider plaintiff's contention that his agency division had a program of "riffing" older employees and then hiring in their place new quest workers, post doctor and junior fellows, as well as term employees.

Ct.Cl. 254 (1954), *cert. denied,* 350 U.S. 936, 76 S.Ct. 308, 100 L.Ed. 817 (1956); *Simon v. United States,* 113 Ct.Cl. 182 (1949). With respect to reduction-in-force, this court has said that "where there has been *a substantial departure from applicable procedures,* a misconstruction of governing legislation, or like error going to the heart of the administrative determination, * * * judicial relief is obtainable" (emphasis added). *Barger v. United States,* 170 Ct.Cl. 207, 214 (1965). *See also Ainsworth v. United States,* 180 Ct.Cl. 166 (1967).

The Back Pay Act, 5 U.S.C. § 5596(b) (1970), now provides the vehicle for allowing back pay for an improper reduction-in-force. That statute authorizes such compensation for an employee "found by appropriate authority under applicable law or regulation to have undergone an unjustified or unwarranted personnel action that has resulted in the withdrawal or reduction of all or a part of the pay, allowances, or differentials of the employee." The Act applies, as here, to an employee determined by this court to have undergone such an unjustified or unwarranted personnel action. *Ainsworth v. United States,* 399 F.2d 176, 180–81, 185 Ct.Cl. 110, 116–19 (1968).

Plaintiff is not, however, entitled to the pay of his original GS–13 position because he has given up the claim that his GS–13 job should not have been abolished and has sought only the pay of the GS–12 post to which he asserts he should have been assigned when the GS–13 was eliminated. *Cf. Chappelle v. United States,* 168 Ct.Cl. 362 (1964); *Kozak v. United States, supra.* On that basis plaintiff's motion for summary judgment is granted and defendant's is denied. Plaintiff is entitled to at least the equivalent of GS–12 pay from the time he began to be paid as a GS–7. He is also entitled, under the Act of August 29, 1972, Pub.L.No. 92–415, 86 Stat. 652, 28 U.S.C. § 1491 (Supp. III, 1973), to be reinstated in one of the GS–12 Electronic Engineer positions he sought or in another GS–12 position for which he is qualified.[19] The determination of the amount of plaintiff's recovery will be made under Rule 131(c).[20]

---

**19.** Unless the agency can clearly show, in further proceedings before the trial judge, that plaintiff would have been reduced in force by the present time even if he had been given one of the GS–12 positions in 1973. *See Kozak v. United States, supra.*

**20.** Plaintiff claims interest prior to judgment but that is not allowable since no statute so provides in this kind of case. *See* 28 U.S.C. § 2516(a) (1970). Attorney's fees, also claimed, are likewise not allowable. *See* 28 U.S.C. § 2412 (1970). As for costs, this court has, as a matter of practice, not given costs to either side.