Civilian pay; reduction-in-force; "bumping” criteria; alleged nonavailability to plaintiff of significant parts of administrative record. — On April 11,1980 the court entered the following order:
Before Davis, Judge, Presiding, Cowen, Senior Judge, and Bennett, Judge.
Plaintiff Curtis E. Vetter was a career GS-13 aerospace engineer in the Reliability Division, Government Furnished Equipment Engineering Branch, of the Manned Space Center of the National Aeronautics and Space Administration at Houston (now the Johnson Space Center of NASA). In August 1971 he was informed that, as of October 1971, he would be reduced-in-force to a GS-12 position (in lieu of separation). He appealed the reduction-in-force to the *708 Dallas Region of the then Civil Service Commission, raising various grounds, among them that he was entitled to "bump” the position of a particular Supervisory Quality Assurance Specialist, GS-13 (as well as several other GS-13 positions).
Not entitled to a full hearing under the statutes and regulations (see Rasmussen v. United States, 211 Ct. Cl. 260, 267, 543 F.2d 134, 137 (1976)), Vetter received only a personal appearance at the regional level of the Commission, which he attended with counsel. After this personal appearance, the Commission’s regional appeals examiner rejected the appeal, determining that there were no GS-13 positions into which plaintiff could "bump” without undue interruption to NASA’s activities. The Commission’s Board of Appeals and Review affirmed. This suit followed, and both sides have moved for summary judgment on the basis of the administrative record. We have heard oral argument and have also considered the parties’ briefs. Our decision favors the defendant.
I.
The major center of controversy lies in Mr. Vetter’s "bumping” rights, and whether the Commission properly considered them and accorded plaintiff his full procedural protection in showing that he possessed "bumping” rights. The reduction-in-force regulations permit a reduced employee to "bump” another employee with lower retention standing if the reduced employee meets the minimum requirements of the other position and also "has the capacity, adaptability and any special skills needed to satisfactorily perform the duties and responsibilities of the position without undue interruption to the activity” (emphasis added). 5 C.F.R. § 351.701(a)(1) and (4); 5 C.F.R. § 351.703. NASA claimed that plaintiff did not meet the minimum qualifications for any of the GS-13 jobs in which he sought to bump the incumbents (and, by necessary implication, that he could not be placed in any of those positions "without undue interruption to the activity”).
At the Commission level, the appropriate unit of the Commission found (in an intra-Commission memorandum) *709 that Vetter did meet the minimum qualifications for one particular GS-13 job — Supervisory Quality Assurance Specialist, GS 13 (then held by James Hebert) — but not for the other 25 jobs. Nothing was said by this Commission unit on the point of "undue interruption.” Another Commission entity concerned with this type of problem informed the appeals examiner that it concurred in this conclusion. The appeals examiner then asked the Commission’s Evaluation Section to determine whether Mr. Vetter could be assigned to the job of Supervisory Quality Assurance Specialist, GS-13, without undue interruption to the agency’s work. The Evaluation Section answered in the negative, saying that even if plaintiff met the minimum standards for the "to-be-bumped.” position, he could not be assigned to it without undue interruption to NASA’s activities.[1] It is plain that the appeals examiner took account of this memorandum of the Evaluation Section, and rested heavily on it.[2]
The most serious of plaintiffs assertions is that he did not know and was not informed of these various intra-Commission memoranda (particularly the Evaluation Section’s memorandum) until after the affirming action of the Board of Appeals and Review. He says that, at the time of his personal appearance before the Region, he asked to see the record but was not shown these memoranda. The written summary of the personal appearance indicates that the appeals examiner inquired of both sides whether they "desired to view or examine the record which had accumulated in the case thus far.” There were a number of objections and statements by plaintiff and his then representative on other matters, but there is no clear showing whether or not the entire record was available for examination, and if so what it contained. Plaintiff has filed affidavits in this court (dated 8 years after the personal appearance) in which he and his then representative say *710 that they did not see the intra-Commission memoranda at the personal appearance, but only the representative’s affidavit is at all specific on the point that these memoran-da were not in fact made available though the whole record was examined. On the other hand, it appears that when the records were sought from the Board of Appeals and Review, after its decision, the relevant intra-Commission memoran-da were included in the BAR file made available to plaintiff at that time.
On the materials and information now before us, we cannot say definitively whether the memoranda in question were in fact made available to plaintiff at the personal appearance if he wished to see them at that time, but we can and do conclude that (a) the documents were in the BAR file if plaintiff wished to see them before making his appellate presentation to that board and (b) the appeals examiner’s decision should have alerted plaintiff to the existence in his case of an "undue interruption” problem, and should have led him to examine the record (at the BAR level) on that particular point. The appeals examiner’s decision stated: "A careful review has been made of your experience and training to determine whether you had reassignment rights to the positions at grade GS-13 listed in your letter of September 22,1971. It has been determined that you are not qualified to perform the duties of the listed positions without undue interruption to the activities of the agency” (emphasis added). Since the NASA presentation barely adverted (if at all) to the "undue interruption” point, and the examiner’s decision referred both to "a careful review” and to the criterion of "without undue interruption,” plaintiff should have been aware that the record before the examiner could well have contained additional material on that precise point. Plaintiff should then have sought to examine the record before the BAR to see if it in fact contained such additional material — both in order to answer that additional material and also to complain that he had not been shown it at the regional level. He made no such effort and, indeed, did not formally claim that he failed to see the intra-Commission record at the time of the personal appearance until some seven years after the BAR *711 decision which affirmed the region on the very point of "undue interruption.”[3]
Rasmussen v. United States, 211 Ct. Cl. 260, 543 F.2d 134 (1976), was quite a different case. There, the employing agency submitted significant new material directly to the Board of Appeals and Review — material which should have been presented at or before Rasmussen’s personal appearance at the regional level and which he should have had the opportunity to answer at that stage. This receipt of new evidence by the BAR contravened the governing regulation and interfered significantly with the employee’s opportunity to comment on that evidence and present counter-evidence. In the present case, on the other hand, if plaintiff had sought to see the BAR record, he could have alerted that tribunal to the alleged fact that he was deprived of the intra-Commission documents at the regional level and to his need (if there was one) to supply further materials and argumentation on the point of "without undue interruption.” His failure to take those necessary steps was the equivalent of a failure to raise and preserve the issue before the BAR. See Pine v. United States, 178 Ct. Cl. 146, 371 F.2d 466 (1967). Accordingly, we need not consider the point that plaintiff was improperly deprived of the intra-Commission memoranda at the time of the personal appearance.
As to the merits of the Commission’s decision that plaintiff could not have filled the other GS-13 slot "without undue interruption,” we are satisfied that substantial evidence sustains the administrative findings. He had not had much supervisory experience which was needed for the "to be bumped” position, and in addition the BAR expressly found that Mr. Vetter’s "background does not show primary design and development experience on any type of hardware” and his "background does not demonstrate possession of the current research, design and development engineering skills and specialized knowledge which would be necessary to perform in the claimed positions without considerable on-the-job training.” On this record the Commission’s conclusion cannot be overturned. See, e.g., Alexander v. United States, 211 Ct. Cl. 368 (1976).
*712 II.
Other arguments raised by Mr. Vetter can be considered more briefly. Charges of discrimination against him (in the reduction-in-force) on account of religion and union activity were considered in a separate District Court proceeding, and decided adversely to plaintiff. Vetter v. Frosch, United States District Court for the Southern District of Texas, Civil Action No. 75-H-1127, decided October 17, 1978, aff’d 599 F.2d 630 (1979). That judicial determination is, of course, binding on us. Plaintiff tries to make some point out of the fact that the second Commission appraisal of his minimum qualifications for the "to be bumped” position came about because the manager of the Commission’s Houston Area Office noted that "although I concur with this rating [i.e. that plaintiff was qualified] for Quality Assurance Specialist, GS-13, by Donald Bonner of my staff, I have asked for a review of the rating by Morris Brooks, Chief of Staffing, because of frequent contacts between the Houston Area Office and Mr. Vetter as an officer in the AFGE Local [a union] at the Manned Spacecraft Center.” We do not read this as exhibiting personal or anti-union bias against plaintiff on the part of the Houston manager (who says he concurs that Mr. Vetter was qualified for the GS-13 post), and the fact is that Mr. Brooks, Chief of the Staffing Branch, also concurred in the conclusion of qualification.
There is also some effort to show that the whole RIF was directed against Mr. Vetter personally (so that he should be treated as if an adverse action was levied against him), but the record (including the District Court findings and judgment)[4] does not at all support that contention, and there is no good reason for us to accept it. See Alexander v. United States, 211 Ct. Cl. 368, 369 (1976); Wilmot v. United States, 205 Ct. Cl. 666, 679 (1974).
For these reasons, it is ordered that plaintiffs motion for summary judgment is denied, defendant’s motion is granted and the petition is dismissed.

 There was no contradiction between the views of the Evaluation Section and those of the Commission’s other units which had previously considered plaintiffs case. The earlier memoranda discussed only the one issue of minimum qualifications. The Evaluation Section considered the separate question of whether plaintiffs assignment to the claimed position would nevertheless result in "undue interruption.”

 No statute, regulation or practice prevented the Commission or the appeals examiner from seeking and considering the views of other Commission units on the problem of plaintiffs eligibility to "bump” another employee.

 The BAR decision is dated July 6, 1972. The affidavits of plaintiff and his representative in this court are dated June 25, 1979.

 And also including the facts that (1) plaintiff was offered but declined a transfer which he now characterizes as part of the scheme to target him for the RIF, and (2) he was not separated but was merely reassigned as a GS-12.