**Hong–Yee CHIU, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 336–79C.**

United States Claims Court.

June 28, 1989.

Irving Kator, Washington, D.C., for plaintiff.

George M. Beasley, III, with whom were Asst. Atty. Gen. John R. Bolton and David M. Cohen, Director, Washington, D.C., for defendant.

## OPINION AND ORDER

ANDEWELT, Judge.

In this civilian pay action, plaintiff, Hong–Yee Chiu, contested his separation

from the National Aeronautics and Space Administration (NASA) as part of a reduction-in-force (RIF) in January of 1978. Plaintiff has since been rehired with back pay. The only issue remaining is plaintiff's application for attorney's fees and expenses under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A). For the reasons set forth herein, plaintiff is entitled to attorney's fees and expenses.

## I.

This action arose out of plaintiff's separation from his position as a GS–15 space scientist at the Goddard Institute for Space Studies (GISS), a part of NASA's Goddard Space Flight Center (GSFC). On the recommendation of Dr. Robert Jastrow, Director of GISS, plaintiff was separated as part of a January 1978 agency-wide RIF at GSFC. In a memorandum justifying the abolishment of Dr. Chiu's position, Dr. Jastrow stated that plaintiff's research work, which involved use of a scientific instrument known as a vidicon, was "not relevant to any current or planned GISS programs." Plaintiff's separation was effective January 20, 1978.

Plaintiff appealed his separation to the Federal Employee Appeals Authority of the Civil Service Commission (FEAA). Plaintiff contended that the RIF action, in reality, was an adverse action stemming from Dr. Jastrow's personal animus against him and that the separation should be set aside because the agency followed RIF procedures rather than procedures applicable to an adverse action against an individual. In November 1978, the FEAA upheld the agency action and concluded that plaintiff's appeal raised no nonfrivolous objections.

Plaintiff appealed the FEAA decision to the Merit Systems Protection Board (MSPB), but was unsuccessful. Thereafter, on July 27, 1979, plaintiff filed the instant action in the Court of Claims.[1] In September of 1980, defendant moved for summary judgment, and, after taking depositions of Dr. Jastrow and other GISS employees, plaintiff filed his cross-motion. On December 15, 1981, the Court of Claims

remanded the case to the MSPB to reconsider in light of the depositions. The court indicated that it was unable to conclude that the depositions raised only frivolous issues. Based apparently on a reading of Dr. Jastrow's deposition testimony, the court observed:

> A feeling that ... [plaintiff's research] was not a worthy contender for financial support, because it was not getting anywhere, and a feeling that the incumbent scientist personally was not producing, seemingly were inextricably mixed, and we have no doubt that the supervisors trained in science rather than the law or personnel administration, are often unable to differentiate clearly and sharply between one feeling and the other.

In April of 1982, the MSPB ruled in favor of plaintiff. The MSPB found that plaintiff's separation was personal to him rather than the product of a proper RIF and ordered that NASA reinstate Dr. Chiu. The MSPB rested its decision on a series of conclusions and observations. First, the MSPB commented on the lack of any documentary support for Dr. Jastrow's testimony to the effect that he was verbally directed to reduce staff, cut back on funding, and reorganize personnel at GISS. The MSPB noted that the evidence did not show any reduction in the overall GISS budget during Fiscal Year (FY) 1978 or in the specific allotment directed to the astronomy program in which plaintiff was employed. The MSPB also noted that scientific personnel had never before been separated from GISS by a RIF, and that Dr. Jastrow admitted that all GISS staff would have been retained had he so recommended.

Next, the MSPB found it significant that Dr. Jastrow separated plaintiff rather than seeking to shift him to another research field that Dr. Jastrow viewed as of higher priority. In the past, Dr. Jastrow apparently had helped other employees switch research areas. But while Dr. Chiu's research had some applicability to earth resources, shortly after Dr. Chiu was sepa-

1. An amended petition was filed on November 7, 1979.

rated, Dr. Jastrow hired another scientist to work in the earth resources area without offering reemployment to Dr. Chiu.

Finally, the MSPB concluded:

Jastrow's deposition establishes his personal animus against [plaintiff]. For example, Jastrow stated that he judged [plaintiff's] work to be unproductive; he considered [plaintiff's] work to be the weakest area of research being conducted by the institute; and that he rated [plaintiff's] work as marginal and well below the norm for GISS. In fact, Jastrow admitted that the "secret" of his establishment is "eliminating the weaklings in the organization."

(Citations omitted.) Plaintiff was reinstated by NASA and received back pay. Pursuant to the parties' stipulation, this court (per Judge Yanello) dismissed the case with prejudice, except as to any application for fees, costs, and expenses under the EAJA.

## II.

Plaintiff filed an EAJA application on December 23, 1982. On August 2, 1984, Judge Yanello awarded plaintiff costs but denied plaintiff's request for attorney's fees and expenses. The court considered plaintiff's application for attorney's fees separately for each stage of the proceedings under the then-controlling EAJA as adopted in 1980 (the 1980 Act). *Chiu v. United States*, 6 Cl.Ct. 18, 23–26 (1984), *aff'd*, 770 F.2d 180 (Fed.Cir.1985), *vacated and remanded*, No. 87–1763 (July 23, 1986). With respect to the Court of Claims litigation, the 1980 Act provided that a prevailing party should receive fees and other expenses incurred in civil litigation "unless the Court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." In concluding that the position of the United States in the Court of Claims litigation was substantially justified, Judge Yanello followed the precedent of the Court of Appeals for the Federal Circuit (CAFC) and focused exclusively on the position of the United States during the court litigation and not on the correctness of NASA/GSFC's original decision to separate plaintiff. *Id.* at 24 (citing *Olsen v.*

*Department of Commerce, Census Bureau*, 735 F.2d 558, 560 (Fed.Cir.1984)). The court found defendant's litigation position substantially justified. *Id.*

Plaintiff appealed the decision as it related to attorney's fees and expenses for the Court of Claims litigation. On May 28, 1985, in an unpublished opinion, the CAFC affirmed "on the basis of the opinion of the Claims Court." On July 26, 1985, plaintiff filed a petition seeking rehearing and suggesting *en banc* consideration. The petition for rehearing was denied on August 5, 1985.

On August 5, 1985, the President signed into law an extension and modification of the EAJA (the 1985 Act). 28 U.S.C. § 2412 (1982 & Supp. III 1985). In an unpublished order, dated July 23, 1986, the CAFC vacated both its order of August 5, 1985, which denied the petition for rehearing, and its unpublished opinion of May 28, 1985, which affirmed the Claims Court's decision not to award attorney's fees and expenses for the Court of Claims litigation. The CAFC remanded the case to the Claims Court to reconsider its prior opinion in view of, *inter alia*, the 1985 legislative modification of the EAJA.

## III.

This court's August 2, 1984, decision denying plaintiff attorney's fees was rendered under the then-controlling 1980 Act. The 1980 Act was amended in 1985 (the 1985 Act) to provide, *inter alia*, that the correctness of the original action by the agency must be considered in determining whether the "position of the United States" was substantially justified. The 1985 Act provides, in pertinent part:

(d)(1)(A) Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of

the United States was substantially justified or that special circumstances make an award unjust.

\* \* \* \* \* \*

(D) "[P]osition of the United States" means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based.... 28 U.S.C. § 2412(d)(1)(A), (d)(2)(D) (1982, Supp. III 1985). Section 7 of the 1985 Act makes the amended version applicable to all cases pending on the date of enactment. 5 U.S.C. § 504 note (Supp. III 1985).

In *Pierce v. Underwood*, — U.S. —, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988), the Supreme Court interpreted the EAJA term "substantially justified" to mean " 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Id.* 108 S.Ct. at 2550. The burden to demonstrate substantial justification is on the government. *Gavette v. OPM*, 808 F.2d 1456, 1465–66 (Fed.Cir.1986) (*en banc*).

Defendant contends that Dr. Jastrow's recommendation to separate plaintiff was substantially justified or, in the alternative, NASA/GSFC's decision to separate based on Dr. Jastrow's recommendation was substantially justified. Moreover, defendant contends that, in any event, "special circumstances make an award unjust."

### IV.

In contending that Dr. Jastrow's recommendation to separate plaintiff was substantially justified, defendant does not dispute many of the factual findings that underlie the MSPB's decision. It does not dispute that there was no reduction in GISS's overall budget or in its astronomy budget for FY 1978, that prior to plaintiff's removal there had never been a RIF of scientific personnel at GISS, that Dr. Jastrow previously had helped other research employees switch research areas, that plaintiff's work had some applicability in the earth resources area, and that Dr. Jastrow hired a scientist to work in the earth resources area shortly after plaintiff's separation. In addition, while defendant vigorously disputes that Dr. Jastrow acted out of personal animus, it does not dispute most of the facts upon which the MSPB relied to support its conclusion that he did, *i.e.*, that Dr. Jastrow judged plaintiff's work to be unproductive and considered plaintiff's research to be the weakest at the institute, and that Dr. Jastrow considered a secret of his establishment to be the elimination of "weaklings in the organization."

Defendant's position, in effect, is that Dr. Jastrow was told by a superior to consider closing out some programs and that the recommendation to separate Dr. Chiu was an appropriate and responsible response to that direction. Defendant argues, *inter alia*, that GISS had received funding reductions for FY 1974 and FY 1975, that Dr. Chiu's work had been half supported for some time by medical research funding from GSFC's Technology Utilization Office, that this funding had been terminated shortly before the RIF, and that Dr. Chiu's efforts in the astronomy area were of low priority and less scientifically significant than research being done elsewhere.

This court has reviewed the administrative record, including the deposition testimony of Dr. Jastrow. The court finds no indication that Dr. Jastrow ever demonstrated a personal animus against Dr. Chiu in the sense that he disliked Dr. Chiu as an individual. It appears that Dr. Jastrow's decision to recommend that plaintiff be separated was made in good faith based upon his perception that the action was consistent with his superior's general direction and would make GISS a more productive and more efficient organization. But while Dr. Jastrow's actions might be viewed as laudable and even rewarded in the private sector, they would not necessarily support a separation from federal service under the RIF regulations that were applicable at the time. 5 C.F.R. § 351.201(a) (1978). Under those regulations, the quality of an employee's individual performance is not a factor in a RIF decision. "A RIF is an administrative procedure by which agencies eliminate jobs and account for employees who occupied abolished positions. It is not an

adverse action against a particular employee, but is directed solely at a position within an agency." *Huber v. Merit Systems Protection Board,* 793 F.2d 284, 286 (Fed. Cir.1986), *cert. denied,* 479 U.S. 1043, 107 S.Ct. 907, 93 L.Ed.2d 857 (1987).

 Defendant contends that it was not permitted to present new evidence to the MSPB on remand but that if it was, it could have presented additional information to show that Dr. Jastrow's recommendation was consistent with controlling RIF regulations. *See* VIII, *infra.* This may be so, but decisions on attorney's fees and expenses under the EAJA are made on the existing record. *Gavette,* 808 F.2d at 1467. Viewing that record evidence in its entirety, the court concludes that defendant has not demonstrated that Dr. Jastrow's recommendation to separate plaintiff was substantially justified under then-applicable RIF procedures. Defendant has not demonstrated "to a degree that could satisfy a reasonable person" that Dr. Jastrow's recommendation was based on the perception that Dr. Chiu's area of research was not worthy of support rather than a decision personal to Dr. Chiu based on the perception that Dr. Chiu's individual performance was unproductive.[2] *See Pierce v. Underwood,* 108 S.Ct. at 2550.

## V.

Defendant contends that even assuming Dr. Jastrow's recommendation was not consistent with controlling RIF regulations, the agency's ultimate decision to separate him was substantially justified. Defendant cites *Keener v. United States,* 165 Ct.Cl. 334 (1964), for the proposition that it could be reasonable for an agency to conclude that a dismissal is valid even though the dismissal has the side effect of satisfying personal animus on the part of the dismissed employee's immediate supervisor.

But *Keener* does not support defendant. In *Keener,* the plaintiff was dismissed based on a RIF stemming from a reorganization of the Office of Financial Assistance of the Small Business Administration (SBA). The dismissed employee had had a strained relationship with his immediate supervisor and alleged that the reorganization had no purpose other than his discharge. The Court of Claims, however, disagreed. The administrator of the SBA who approved the reorganization had been concerned about the delinquency rate on SBA loans and discussed the proposed reorganization as a means of addressing that problem with SBA employees apart from the plaintiff's immediate supervisor. The court concluded that the strained relationship between the plaintiff and his supervisor was only a secondary consideration and that the administrator would not have approved the reorganization unless he believed it was appropriate to address the loan delinquency problem. *Id.* at 341 n. 5. In the case at bar, however, there is no such evidence of an independent evaluation of the RIF determination by the ultimate decision maker in the agency. Rather, the sole basis in the record for the decision to include plaintiff in the RIF is the recommendation by Dr. Jastrow.[3]

## VI.

As an alternative argument, defendant contends that the "position of the United States" should be found to be substantially justified even if NASA/GSFC's decision to separate plaintiff was not itself substantially justified. Defendant argues that in evaluating whether the position of the United States was substantially justified, the court

---

2. For example, in discussing astronomical applications of vidicons, Dr. Jastrow stated during his deposition that he terminated the vidicon project because plaintiff "did not seem to be outstandingly successful or productive in the implementation of that idea."

3. In further support of its contention that the agency action was substantially justified, defendant notes that in commenting on the request for attorney's fees covering the MSPB proceedings on remand, Judge Yanello concluded that it was not unreasonable for the United States during the MSPB remand "to urge, as it did, that wholly apart from any animus on the part of Dr. Jastrow, the marginal decision to discontinue plaintiff's position was nonetheless appropriately undertaken." But Judge Yanello's statement constitutes an assessment of plaintiff's litigation position and not of the reasonableness *per se* of the original agency action.

should not limit its review to the original agency action but should consider, based upon the record developed in the Court of Claims litigation, the totality of the circumstances, including the proceedings before the FEAA, the MSPB, and the Court of Claims.

Defendant is correct to the extent that the statutory definition of the "position of the United States" provides that the position to be evaluated includes both the original agency action or failure to act and the position taken by the United States in the civil action, *i.e.*, this Claims Court action. Indeed, the courts have interpreted this definition as not requiring a finding of lack of substantial justification in all cases where the underlying agency action was not itself substantially justified. *Luciano Pisoni Fabbrica Accessori Instrumenti Musicali v. United States*, 837 F.2d 465, 467, *cert. denied*, — U.S. —, 109 S.Ct. 60, 102 L.Ed.2d 38 (Fed.Cir.1988); *FEC v. Rose*, 806 F.2d 1081, 1089–90 (D.C.Cir. 1986). But, on the facts of this case, even assuming the position of the United States during this civil action was substantially justified, the position of the United States overall was not. Herein, the agency action had the substantial effect of separating plaintiff from his career position while the litigation phase was abbreviated, never reached the merits, and involved primarily the issue of the correctness of the agency decision to separate plaintiff. On these facts, any justification for the litigation phase cannot outweigh the lack of substantial justification for the original agency action.

## VII.

Next, defendant contends that regardless of the outcome of this court's inquiry into whether the position of the United States was substantially justified, a grant of attorney's fees is inappropriate under the

1985 Act because "special circumstances make an award unjust" in two ways. 28 U.S.C. § 2412(d)(1)(A).

The first alleged "special circumstance" is the 1985 amendment of the EAJA. As explained above, prior to the 1985 amendment, the EAJA did not specifically provide that the original agency action should be examined as part of the inquiry into whether the position of the United States was substantially justified. The CAFC had concluded that it should not. *Olsen*, 735 F.2d at 561. Applying that interpretation, Judge Yanello concluded that attorney's fees were not recoverable in this action. Defendant argues that it would be unjust to oblige defendant to pay those attorney's fees and expenses that were incurred prior to the 1985 amendment because they would not have been recoverable under the law that applied at the time the fees and expenses were incurred.

But Congress appears to have rejected such an interpretation when it amended the EAJA in 1985 and made its new provisions applicable to all pending litigation. The legislative history indicates that Congress had intended to make the original agency action a part of the substantial justification inquiry when it originally adopted the EAJA in 1978.[4] Apparently to give life to that intent, Congress made the 1985 Act applicable to all cases pending on the date of its adoption. It would, therefore, run contrary to congressional intent to consider the 1985 amendment to constitute a "special circumstance" that supports denial of attorney's fees and expenses incurred prior to its adoption.

Defendant's second purported "special circumstance" focuses on the MSPB's alleged failure to give the United States an opportunity to be represented by counsel in the remand proceeding. Defendant contends that NASA expected the MSPB to

4. The Committee ... defines the "position" [of the United States] term in a way to clarify the EAJA, consistent with the original Congressional intent and the underlying purposes of the statute....

In clarifying the "position" term, the Committee expressly rejects the holding ... that

the only government "position" to be scrutinized in the context of an EAJA case is that taken in the litigation itself.
H.R.Rep. No. 99–120, 99th Cong., 1st Sess., pt. 1, at 12, *reprinted in* 1985 U.S.Code Cong. & Admin. News 132, 140.

follow its usual procedures which would have resulted in the parties being notified of the schedule for further MSPB proceedings and given an opportunity to submit additional evidence and present legal arguments. Instead, defendant asserts, the MSPB communicated only with plaintiff's counsel, obtained copies of the depositions from either the Clerk of the Court of Claims or the reporter, and issued an opinion without any communication with agency counsel of its intent to do so. Moreover, defendant contends that the MSPB was legally obliged to send the case to a regional board for reevaluation rather than to decide the case itself. *See Rasmussen.v. United States*, 211 Ct.Cl. 260, 543 F.2d 134 (1976).

 Defendant indeed may have been prejudiced by the MSPB's failure to transfer the case to a regional board or to permit defendant to comment on and submit evidence relating to Dr. Jastrow's deposition. But any such prejudice would not render an award of attorney's fees and expenses to plaintiff unjust. Defendant's primary objection relates to the handling of the remand by the MSPB, not by plaintiff.[5] It is not obvious that the alleged prejudicial actions by the MSPB were outcome determinative in that the MSPB would have rendered a different decision had it adopted its usual procedures. In this context, it would not be appropriate to prevent plaintiff from receiving attorney's fees and expenses that would otherwise be due because the MSPB allegedly erred in selecting the procedures to employ on remand.

### Conclusion

For the reasons set forth above, plaintiff is entitled to attorney's fees and expenses. On or before the date 21 days from the date of this opinion, plaintiff shall file a "Final Accounting" setting forth an updated, itemized statement of the allowable fees and expenses along with copies of the corresponding billing statements. Defendant may file a response to plaintiff's statement within 14 days after service thereof.

IT IS SO ORDERED.

---

5. Defendant directly faults plaintiff for never serving it with a copy of counsel for plaintiff's letter to the MSPB requesting that the remanded action be sent for ultimate resolution to a regional board. Defendant alleges that had it been served, it would have agreed with the request and, ultimately, assuming a transfer was granted, would have presented its arguments on the merits to the regional board. But this failure to notify defendant would not render an award of attorney's fees unjust. Indeed, at the time, plaintiff apparently wanted the same result as defendant—remand to a regional board. Plaintiff attempted to secure such a remand rather than attempting to thwart defendant's effort to secure it.