**Vartkes YEGHIAYAN and Frank E. Williams**

v.

**The UNITED STATES.**

No. 499–78.

United States Court of Claims.

May 6, 1981.

Lawrence Speiser, Washington, D.C., atty. of record, for plaintiffs. Marsha E. Swiss and Weissbrodt & Weissbrodt, Washington, D.C., of counsel.

Frank M. Rapoport, Washington, D.C., with whom was Asst. Atty. Gen. Alice Daniel, Washington, D.C., for defendant.

Before KASHIWA, BENNETT and SMITH, Judges.

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT

EDWARD S. SMITH, Judge.

This civilian pay case is before the court on cross-motions for summary judgment. Plaintiffs are former Foreign Service Reserve (FSR) officers whose time-limited assignments in the FSR were terminated because, according to the Government, "the need no longer existed for plaintiffs' services." Upon termination from the FSR, plaintiff Frank E. Williams exercised his reinstatement rights under 22 U.S.C. § 928 (1976) and was appointed to a non-career executive position on the domestic side of ACTION.[1] Approximately 1 month later, he was removed from this position because of his lack of a "confidential relationship"

with his immediate superior in ACTION. His removal was upheld by the Federal Employee Appeals Authority (FEAA). Plaintiff Vartkes Yeghiayan chose not to exercise his reinstatement rights under section 928.

Both plaintiffs characterize their terminations from the FSR as unlawful. Specifically, in their petition to this court, they allege that the terminations violated (i) their rights under 3 Foreign Affairs Manual (FAM) §§ 710, 713 (1970), and (ii) the guarantee of procedural due process embodied in the fifth amendment. Additionally, in their cross-motion for summary judgment, they assert they were terminated from the FSR solely because of their partisan political affiliation. Their corollary to this assertion is that the terminations were an impermissible encroachment on their first amendment freedoms of association and belief. Finally, Williams complains that his short-lived reinstatement to the domestic side of ACTION was a sham and, as such, was violative of his rights.

We have carefully considered all of plaintiffs' contentions. We conclude, after oral argument and for the reasons stated below, that the contentions are devoid of merit. Accordingly, we grant defendant's motion for summary judgment.

### I.

A. On July 21, 1976, Yeghiayan was appointed to the FSR to serve as Assistant Director for Special Affairs in the Office of Special Affairs at ACTION. His appointment was at the FSR-1 level and was due to expire in February 1979.[2] In January 1977, the Carter administration replaced the Ford administration. A new director of ACTION, Sam Brown, was confirmed by the United States Senate on February 25, 1977.

On October 20, 1977, Yeghiayan was notified by Brown that his services as Assistant Director for Special Affairs were no longer needed and that his FSR appointment

---

1. ACTION is the umbrella agency for the Peace Corps and VISTA.

2. The appointment was a time-limited 30-month appointment.

would be terminated on November 30, 1977. By letter of November 30, 1977, Yeghiayan was advised that the effective date of his termination from the FSR was postponed to December 31, 1977. On January 16, 1978, having been terminated from the FSR, Yeghiayan was hired by ACTION as an independent consultant. The Office of Special Affairs was abolished May 4, 1978.[3]

B. On April 1, 1973, Williams was appointed Deputy Associate Director for Domestic and Anti-Poverty Operations at ACTION. The position was a GS–16 non-career executive position. Williams held the position until July 1, 1976. On that date, he was appointed to the FSR to serve as Africa Regional Director for the Peace Corps. This appointment was at the FSR–1 level and was due to expire in February 1979.[4]

By letter from Sam Brown dated August 25, 1977, Williams was notified that his services as Africa Regional Director were no longer needed and that his FSR appointment would be terminated on September 25, 1977. In the same letter, Williams was informed that if he chose to exercise his right to be reemployed by the domestic side of ACTION, "provisions [would] be made for [him] to occupy an NEA GS–16 position for the regulatory period of time required to separate [him] from the NEA position."[5] By memorandum dated October 11, 1977, Williams was notified that his termination from the FSR would be delayed until provisions could be made for him to exercise his reemployment rights. On November 2, 1977, he exercised these rights and became Special Assistant to the Associate Director for Domestic and Anti-Poverty Operations at ACTION. His new position was a GS–16 non-career executive position.

By letter dated November 3, 1977, John Lewis, Associate Director for Domestic and Anti-Poverty Operations, issued a notice of proposed adverse action to Williams. In the notice, Lewis stated in part:

> As Associate Director of the Office of Domestic and Anti-Poverty Operations, I wish to exercise my discretion to fill policy-determining positions with individuals in whom I have complete personal confidence and trust. Since such a confidential relationship does not exist between us, I propose to remove you from your position of Special Assistant to the Associate Director, D.O., not earlier than thirty days from your receipt of this letter.

The proposed removal of Williams was sustained by Brown. In a letter dated December 1, 1977, the latter notified Williams that his removal was effective December 9, 1977.

Williams, a veteran, appealed his removal to the FEAA. A hearing in this matter was held before the FEAA on April 5, 1978. By decision dated June 12, 1978, the FEAA upheld the removal.

C. On February 10, 1978, plaintiffs filed suit in the United States District Court for the District of Columbia. Defendant's motion to dismiss was granted and the case was transferred to this court pursuant to 28 U.S.C. § 1406(c) (1976). In their petition to this court, plaintiffs seek, *inter alia*, back pay under the Back Pay Act,[6] reinstatement, reasonable attorney's fees, and costs.[7]

## II.

A. (1) Section 7(a)(1) of the Peace Corps Act, as amended, 22 U.S.C. § 2506(a)(1) (1976), provides the President, and through delegation, the director of ACTION, with authority to employ persons for duty in the Peace Corps. Section 7(a)(2) of the act, 22 U.S.C. § 2506(a)(2) (1976), authorizes the director of ACTION to "utilize such author-

---

**3.** Between December 1, 1977, and May 4, 1978, Francis Luzzatto served as Acting Director of the Office of Special Affairs.

**4.** The appointment was a time-limited 30-month appointment.

**5.** NEA is an acronym for non-career executive assignment.

**6.** 5 U.S.C. § 5596 (1976).

**7.** Under no circumstances would attorney's fees be allowable in this case. *Nibali v. United States*, 225 Ct.Cl. ——, 634 F.2d 494 (1980). As for costs, this court has, as a matter of practice, not given costs to either side. *Rasmussen v. United States*, 211 Ct.Cl. 260, 543 F.2d 134 (1976).

ity contained in the Foreign Service Act of 1946, as amended, relating to Foreign Service Reserve officers, * * * as he deems necessary to carry out functions under [the Peace Corps Act]." One provision of the Foreign Service Act[8] available to the director is codified at 22 U.S.C. § 1008 (1976). Section 1008 provides:

> *Notwithstanding the provisions of this or any other law*, the Secretary [of State] may, under such regulations as he may prescribe, terminate *at any time* the services of *any* Reserve officer or staff officer or employee serving under limited appointment, except that, if the termination is because of misconduct, the provisions of section 1007 of this title shall be applicable. [Emphasis supplied.][9]

The "regulations" promulgated by the Secretary of State pursuant to his authority under section 1008 are found at 3 FAM §§ 710–19 (1970). Section 713 of these regulations reads in part:

> A Reserve officer may be separated on a date specified in the DS–1032 effecting his appointment or assignment; when the program for which he was appointed expires; *when the need no longer exists for his services*; or when he fails to perform his duties satisfactorily. * * * A Reserve officer against whom charges of misconduct have been initiated shall be *separated in accordance with the procedure prescribed in section 760.* [Emphasis supplied.]

Absent charges of misconduct, the regulations impose only a single procedural requirement for effecting the termination of a time-limited FSR appointment. The requirement is that "a letter [be] sent to the employee concerned * * *, notifying him of the impending separation. The letter of notification must be issued at least 30 days in advance of the effective date of separation." 3 FAM § 716. In the case of an employee with reinstatement rights under 22 U.S.C. § 928 (1976), it appears that the letter must be issued at least 2 months in advance of termination. 3 FAM § 717.

Sections 710 through 719 of 3 FAM are binding on ACTION with respect to all terminations not predicated on unsatisfactory performance of duty or misconduct.[10] As for terminations based on "personal cause," *i. e.*, on unsatisfactory performance of duty or misconduct, ACTION has chosen not to be guided by the FAM and has, instead, promulgated its own set of procedural rules.[11]

(2) Upon termination certain FSR officers can invoke 22 U.S.C. § 928. The section reads in pertinent part:

> Upon the termination of the assignment of a Reserve officer *assigned from any Government agency*, such person shall be entitled to reinstatement in the Government agency by which he is regularly employed in the same position he occupied at the time of assignment, or in a *corresponding* or higher position. [Emphasis supplied.]

B. We consider first plaintiffs' terminations from the FSR. Plaintiffs were not afforded at the administrative level an opportunity to challenge the terminations. More specifically, plaintiffs were terminated without an opportunity to reply to the notifications that they would be terminated and without an opportunity for a hearing. Plaintiffs argue that the summary manner in which they were terminated from the

---

**8.** 22 U.S.C. §§ 801 *et seq.* (1976).

**9.** Section 1007 grants to certain Foreign Service officers and employees and to certain FSR officers, the right to a preremoval hearing and the right not to be removed except "for such * * * cause as will promote the efficiency of the Service." Section 1007 states that its provisions "shall not apply to * * * any * * * officer or employee of the Service * * * whose appointment is limited or temporary, except when separation is by reason of misconduct."

**10.** See ACTION Transmittal Letter No. 195, dated August 14, 1970; ACTION Order No. 752.2, dated February 22, 1973; and ACTION Transmittal Letter No. 74–18, dated March 13, 1974.

**11.** These rules are set forth in ACTION Order No. 752.2 as modified by ACTION Transmittal Letter No. 74–18.

FSR violates their fifth amendment right to procedural due process.[12]

■ There are three strands to plaintiffs' argument. First, plaintiffs assert their terminations have deprived them of the "liberty" safeguarded by the fifth amendment. The short answer to this assertion is that we lack jurisdiction to entertain it.[13] Moreover, even if we had jurisdiction, we would reject the assertion. The Government terminated plaintiffs from the FSR *solely* because "the need no longer exist[ed] for [their] services." The Government never charged plaintiffs with unsatisfactory performance of duty or misconduct. It follows that, in terminating them, the Government did not put in question their reputation or integrity. Accordingly, plaintiffs' terminations from the FSR did not deprive them of liberty in the constitutional sense.[14]

■ The second strand of plaintiffs' due process argument involves their assertion that their terminations violated their first amendment freedoms of belief and association. Plaintiffs contend that, because they make this assertion, they were entitled to "due process procedures" at the administrative level. All that need be said about plaintiffs' contention is that the Supreme Court has rejected it at least twice.[15]

The final strand of plaintiffs' due process argument concerns 3 FAM § 713.[16] Plaintiffs postulate that section 713 granted to them a "property" interest in continued employment in the FSR. More specifically, they argue that the regulation entitled them to continue their employment in the FSR until there occurred any of the "grounds" for separation specified in the regulation.[17]

We disagree with plaintiffs' construction of the regulation. Section 713 of 3 FAM must be read in conjunction with 22 U.S.C. § 1008. Section 1008[18] provides that the hiring authority "may, under such regulations as he may prescribe, terminate *at any time* the services of *any* Reserve officer * * serving under limited appointment." (Emphasis supplied.) Thus, absent regulations to the contrary, section 1008 renders time-limited FSR appointments terminable at will.[19] That this is the intention of Congress is made clear by the legislative history of section 1008. In the Senate report accompanying the legislative proposal which became the section, it is stated that the section is intended to "permit the [hiring authority] notwithstanding any other law to terminate at any time the service of any Reserve officer * * * serving under a limited appointment."[20] In the same Senate report, it is noted:[21]

* * * The usual reason for termination of temporary, limited, or probationary employees is that there is not sufficient work for such employees to do or that the specific work for which they

---

12. Plaintiffs do not allege that the manner in which they were terminated violates any procedure prescribed by statute or regulation.

13. *Fiorentino v. United States*, 221 Ct.Cl. ——, 607 F.2d 963 (1979), *cert. denied*, 444 U.S. 1083, 100 S.Ct. 1039, 62 L.Ed.2d 768 (1980).

14. *See Board of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972); *Crisan v. United States*, 650 F.2d 286, —— Ct.Cl. —— (1980).

15. *Perry v. Sindermann*, 408 U.S. 593, 599 n.5, 92 S.Ct. 2694, 2698 n.5, 33 L.Ed.2d 570 (1972); *Board of Regents v. Roth, supra* note 14, 408 U.S. at 575 n.14, 92 S.Ct. at 2708 n.14.

16. Because plaintiffs' terminations were not based on unsatisfactory performance of duty or misconduct, 3 FAM §§ 710–19 were applicable to the terminations.

17. Plaintiffs' corollary to this argument is that they were entitled to due process procedures to determine whether "the need no longer exist[ed] for [their] services." The quoted words constitute, of course, the stated reason for plaintiffs' terminations and one of the grounds for separation specified in section 713.

18. Which is quoted in its entirety in section II.A of this opinion, *supra*.

19. *See Coster v. United States*, 202 Ct.Cl. 643, 485 F.2d 649 (1973).

20. S.Rep.No. 880, 86th Cong., 1st Sess. 10 (1959).

21. *Id.* at 7.

were employed has ended. The [hiring authority's] discretion [to terminate them] is, however, not limited to such reasons. * * *

The text and legislative history of section 1008 are not the only expression of the congressional intention that, in the absence of regulations to the contrary, time-limited FSR appointments are to be terminable at will. In 22 U.S.C. § 1007, Congress provides, *inter alia,* that (a) certain FSR officers are removable only "for such * * * cause as will promote the efficiency of the Service" and (b) these officers must be afforded an opportunity for a preremoval hearing. Congress limits the coverage of section 1007 by stating therein that its provisions "*shall not* apply to * * * any * * * officer or employee of the Service * * * whose appointment is *limited* or temporary, except when separation is by reason of misconduct." [22] (Emphasis supplied.) Hence, in section 1007, Congress makes clear that the authority to terminate time-limited FSR appointments is not circumscribed by a statutory standard of cause.

Plaintiffs argue, however, that 3 FAM § 713 imposes such a standard. As support for their argument, they point out that (a) 22 U.S.C. § 1008 makes time-limited FSR appointments terminable under such regulations as the hiring authority may prescribe and (b) 3 FAM § 713, which is one such regulation, specifies several grounds for separating time-limited FSR officers.

Section 713 states these grounds as follows: "A Reserve officer may be separated [when his appointment expires]; when the program for which he was appointed expires; when the need no longer exists for *his* services; *or* when he fails to perform his duties satisfactorily." (Emphasis supplied.)

In our view, this statement of grounds for separation is intended to "cover the waterfront." In other words, the stated grounds do not limit the discretion which Congress has vested in the hiring authority; rather they reflect and preserve to the hiring authority the full scope of this discretion. In particular, we regard the ground, "the need no longer exists for his services," as encompassing virtually *any* situation which cannot be subsumed under the other stated grounds or under the ground of misconduct.[23]

■ In sum, section 713 is not intended to and does not change the terminable-at-will quality of time-limited FSR appointments. This conclusion is buttressed by the fact that 3 FAM §§ 710–19 prescribe no due process procedures for separating time-limited FSR officers on the grounds specified in section 713. The absence of such procedures is persuasive evidence that the hiring authority does not intend section 713 to bestow an entitlement to continued employment.

■■ On the basis of the foregoing discussion, we hold that 3 FAM § 713 does not

---

**22.** If the hiring authority seeks to remove a time-limited FSR officer because of alleged misconduct, it must afford the officer an opportunity to clear his name in a preremoval hearing. Congress confers the right to such a hearing, not because the officer has a property interest in continued employment, but because the charge of misconduct reflects adversely on his character. See S.Rep.No. 880, *supra* note 20, at 7.

**23.** Plaintiffs note that, after they were separated from the FSR, ACTION continued to render the types of services which they had performed. Specifically, a person was named to succeed Williams as Africa Regional Director, Yeghiayan's duties were assumed by an acting director of the Office of Special Affairs, and Yeghiayan was hired as an independent consultant. From these circumstances, plaintiffs conclude that, contrary to what the Government told them, the need for their services continued to exist as of and after their separations from the FSR.

In its notifications to plaintiffs that they would be separated from the FSR, the Government "explained" the separations merely by stating that plaintiffs' services were no longer needed. At no time did the Government state that there was not a need for *the types* of services which plaintiffs were performing. The Government's "explanation" for separating plaintiffs was, in effect, a polite method of terminating them without specifying any reason for doing so. Because plaintiffs were terminable at will, the Government was not required to specify a reason. *Batchelor v. United States,* 169 Ct.Cl. 180, *cert. denied,* 382 U.S. 870, 86 S.Ct. 147, 15 L.Ed.2d 109 (1965).

confer a property interest in continued employment in the FSR. Furthermore, we hold that plaintiffs' summary terminations from the FSR do not violate their constitutional right to procedural due process.[24]

We turn now to plaintiffs' argument that their terminations from the FSR violated their first amendment freedoms of belief and association. The crux of plaintiffs' argument is their assertion that they were terminated solely because of their political party affiliation.[25] In their petition, plaintiffs do not identify their party affiliation and do not allege that their terminations were the result of political patronage. They make this allegation for the first time in their cross-motion for summary judgment.[26]

The only evidence which plaintiffs adduce to support the allegation is an affidavit by Williams. In the affidavit, he states in pertinent part:

I went to see [Sam] Brown to ask why I was being removed [from the FSR]. He said, "Well, Frank, you guys have known since January who won the election." I was told that I was considered a political appointee. I learned that the new Director of the Peace Corps had stated, "If he's a damn Republican, he's got to go."

The Government counters this affidavit with an affidavit by Sam Brown. In his affidavit, Brown states:

2. I terminated the named plaintiffs because I did not believe they shared my perspectives on the future direction of Action's policies and programs.

3. At no time, including the present, did I have any knowledge about either plaintiffs' political affiliation.

Plaintiffs do not dispute that Brown believed plaintiffs did not share his "perspectives on the future direction of Action's policies and programs." Because plaintiffs' positions in the FSR were of a policymaking nature,[27] Brown's belief provided him with a legitimate basis for terminating plaintiffs. Notwithstanding this, plaintiffs assert that the *sole* basis for their terminations was their political party affiliation.

■ The question is, then, whether Williams' affidavit gives rise to an issue of material fact with respect to plaintiffs' patronage claim. We think not. Brown's purported comment to Williams, "Well, Frank, you guys have known since January who won the election," is entirely consistent with Brown's statement that he terminated plaintiffs because of differences over policy. The January 1977 inauguration of Brown's boss, President Carter, ushered in a new administration. At this writing, the boot is on the other foot. A new administration, regardless of its partisan stripes, entails new people with different ideas and policies. Holdover policymakers who are terminable at will constitute a relatively infinitesimal portion of the 2.7 million employees of the Federal Government. By now it

---

24. *See also Kirschner v. United States*, 172 Ct.Cl. 526 (1965).

25. The Supreme Court has held that the dismissal of a public employee solely on this basis is prohibited by the first amendment unless "the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti v. Finkel*, 445 U.S. 507, 518, 100 S.Ct. 1287, 1294, 63 L.Ed.2d 574 (1980).

26. Even at this stage of the proceedings, neither plaintiff has explicitly identified his party affiliation. This is not to say that the court is seriously uncertain as to what it might have been.

27. It is clear from official descriptions of the positions—descriptions which were submitted to the U.S. Civil Service Commission—that the positions involved policymaking duties. Moreover, Williams states in his affidavit that his duties "included the preparation of a budget for the [Africa] Region to be submitted to the Director of the Peace Corps." Preparation of a budget of this magnitude must have entailed policy decisions. As for Yeghiayan, he states in his affidavit that his "responsibilities were to develop and recommend policies and guide lines for various programs within the Office of Special Affairs."

Thus, there can be no doubt that plaintiffs were policymakers. As such, under the rationale of Justice Brennan's plurality opinion in *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), plaintiffs could have been dismissed solely on the basis of their partisan political affiliation.

should come as no surprise that these policymakers are vulnerable to ouster from their positions if they lack the confidence of or do not subscribe to the policies of their new superiors. Brown's purported comment to Williams was nothing more than an acknowledgement of this principle.[28]

Williams' statements that he "was told * * * [he] was considered a political appointee" and that he "learned * * * the new Director of the Peace Corps had stated, 'If he's a damn Republican, he's got to go,'" have, in our opinion, no probative value. Not only are the statements rank hearsay, they do not identify the source of the "information" which they report. Moreover, "political appointee" in federalese often signifies nothing more than a policymaker who is terminable at will.

In sum, plaintiffs have failed to make even a prima facie showing that their political party affiliation played a role in their terminations from the FSR. Moreover, even assuming that party affiliation was a factor in plaintiffs' terminations, we would uphold the terminations. It is clear that, because he believed plaintiffs and he did not share a commonality of philosophy regarding the future of ACTION, Brown would have terminated plaintiffs whatever was their partisan affiliation.[29]

C. Having upheld the validity of plaintiffs' terminations from the FSR, we turn to Williams' reinstatement to the domestic side of ACTION. Williams argues that, because ACTION intended to and in fact did initiate his removal from the domestic side as soon as he was reinstated to it, ACTION violated his rights under 22 U.S.C. § 928. Although it may well be that reinstatement followed by another notice of termination could be held to be tantamount to a failure to reinstate, such a rule would require more of an agency than is required by the applicable statute. Section 928 entitled Williams to "reinstatement in [ACTION] in the same position he occupied at the time of assignment [to the FSR], or in a corresponding or higher position." The section did not, however, require ACTION to keep Williams reemployed for any minimum length of time.

Immediately prior to his assignment to the FSR, Williams was Deputy Associate Director for Domestic and Anti-Poverty Operations at ACTION. His position was a policymaking non-career executive assignment (NEA) at the GS–16 level. Hence, section 928 entitled him to reinstatement to this or a corresponding NEA position. The position to which he was appointed upon reinstatement was Special Assistant to the Associate Director for Domestic and Anti-Poverty Operations. Like his earlier position, this was a policymaking NEA position at the GS–16 level.

By appointing Williams to this position, the Government satisfied fully his rights under section 928. Section 928 did not entitle Williams to choose the position to which he would be appointed upon reinstatement. Nor did it entitle him to any specific position upon reinstatement. It merely entitled him to reinstatement to a GS–16 NEA position. Williams was reinstated to such a position and was thereby accorded his rights under section 928.

Williams' retention of his new NEA position was governed by the Civil Service regulations applicable to NEA positions in general and, because Williams was a veteran, by the procedural requirements for separating preference eligibles. Williams was removed from his new position because he lacked a confidential relationship with his superior, John Lewis.[30] It is settled that lack of a confidential relationship with one's superiors is a permissible basis for removing an employee occupying an NEA position.[31]

---

**28.** See Shaw v. United States, 226 Ct.Cl. ——, 640 F.2d 1254 (1981).

**29.** See generally Farkas v. Thornburgh, 493 F.Supp. 1168 (E.D.Pa.1980).

**30.** Williams admits in his affidavit that he "had no confidential or working relationship with [Lewis] at any time."

**31.** Shaw v. United States, supra, note 28; see Leonard v. Douglas, 321 F.2d 749 (D.C.Cir. 1963).

This principle applies regardless of whether the employee is a preference eligible.[32]

In the notice of proposed adverse action issued to Williams, Lewis stated that he lacked a confidential relationship with Williams. This uncontroverted statement was the only "evidence" which the Government was legally required to adduce to support Williams' removal.[33] The FEAA acted correctly in sustaining the removal on the basis of this statement.

## CONCLUSION

Defendant's motion for summary judgment is granted. Plaintiffs' cross-motion for summary judgment is denied. The petition is dismissed.

**32.** *Shaw v. United States, supra* note 28; *see Leonard v. Douglas, supra* note 31.

**33.** *Shaw v. United States, supra* note 28.