690 F.2d 330
 Brian CHU, M.D., James R. Goss, D.O., Khadijah Hamdallah,
M.D., Staley Jackson, M.D., David O. King, D.O., Mitchell
Koffler, M.D., Gregory Lower, D.O., Rukhsana Rahman, M.D.
and Judith L. Shoner, M.D., Plaintiffs-Appellants,
v.
Richard SCHWEIKER, Secretary, Department of Health and Human
Services; Dr. Edward Brandt, Jr., Assistant Secretary of
Health, United States Public Health Service; John H. Kelso,
Acting Administrator, Health Services Administration; Dr.
John E. Marshall, Associate Administrator for Operations,
Health Services Administration; Dr. Leonard Bachman, Acting
Director, Bureau of Medical Services; United States
Department of Health and Human Services; United States
Public Health Services; United States Health Services
Administration and Bureau of Medical Services, Defendants-Appellees.
 Nos. 1390, 1391, Dockets 82-6103, 82-6113.
 United States Court of Appeals,
Second Circuit.
 Argued June 18, 1982.
Decided Oct. 1, 1982.
 
 1
 Jane E. Bloom, Asst. U. S. Atty., New York City (John S. Martin, Jr., U. S. Atty. for the S. D. New York, Peter C. Salerno, Asst. U. S. Atty., New York City, of counsel), for defendants-appellees.
 
 
 2
 Whitney North Seymour, Jr., New York City (Simpson, Thacher & Bartlett, Jean E. Ericson, Michael D. Nathan, New York City, of counsel), for plaintiffs-appellants.
 
 
 3
 Before NEWMAN and PIERCE, Circuit Judges, and CANNELLA, Senior District Judge.*
 
 CANNELLA, District Judge:
 
 4
 Plaintiffs, medical residents at the now-closed United States Public Health Service ("PHS") hospital in Staten Island, commenced this action seeking an order directing the Secretary of Health and Human Services (the "Secretary") either to place them in private or other federal residency programs or to support them in mutually acceptable residency programs. The District Court, Charles L. Brieant, Judge, consolidated the hearing on plaintiffs' motion for a preliminary injunction with a trial on the merits. In a decision dated February 5, 1982, Judge Brieant held that plaintiffs had a constitutionally protected property interest in continuing their respective residency programs at the expense of the Secretary and on March 5, 1982, issued a declaratory judgment to that effect. Judge Brieant declined, however, to grant plaintiffs the injunctive relief they requested and instead transferred the action to the Court of Claims pursuant to 28 U.S.C. § 1406(c) (1976) for a determination of damages. Defendants appeal from the declaratory judgment, and plaintiffs cross-appeal from the District Court's refusal to issue an injunction obligating defendants to place or support plaintiffs in residency programs.
 
 FACTS
 
 5
 Plaintiffs are either commissioned officers or civil service employees of the PHS appointed to serve as residents at the PHS hospital in Staten Island.[1] None of the plaintiffs, however, will be able to complete their training at the hospital because it was closed on October 31, 1981.
 
 
 6
 In early 1981, President Reagan proposed to close all PHS hospitals as part of his plan to reduce federal spending. Subsequently, a Task Force within PHS was created to oversee and coordinate the closing of PHS's hospitals and clinics. The Task Force initially assumed that all hospitals would be closed on June 30, 1981. Accordingly, PHS advised all hospital directors on March 18, 1981, "not to make commitments to train people after July 1st and ... to tell (residents) that they needed to understand that there was some likelihood that there would be no hospitals and ... no training after that point of time." J.App. at 135. Because several directors expressed their concern whether in the absence of medical residents PHS hospitals could properly serve eligible patients if the PHS remained in operation after June 30, 1981, PHS sent another memorandum to all hospital directors on March 27. In contrast to the prior memorandum, this memorandum stated that incoming residents would "be supported in an approved program mutually acceptable to the trainees and the (PHS)." J.Exh.App. at 102. Nevertheless, on May 19, 1981, all incoming residents and interns were informed that the Secretary had submitted legislation to Congress providing for the "termination of the PHS hospital and clinical system effective September 30, 1981." Moreover, incoming residents were told that "if the legislation ... is enacted, the (Secretary) will be under no legal obligation to provide you with graduate education. Any contrary information you may have previously received was incorrect and should not be relied upon." Id. at 104.
 
 
 7
 On May 26, 1981, the Sailors' Union of the Pacific, AFL/CIO, filed suit in the Northern District of California seeking to enjoin the Secretary from reducing the level of services offered by PHS hospitals. On June 4, 1981, the district court issued a preliminary injunction precluding PHS from proceeding with its planned closings and reductions in services. See Sailors' Union of the Pacific, AFL/CIO v. Schweiker, No. C. 81-2079 (N.D.Cal. June 4, 1981), vacated and remanded, No. 81-4295 (9th Cir. June 24, 1981) ("Sailors' Union "). To avoid being held in contempt of the Sailors' Union injunction, the PHS advised all incoming residents that they could report to PHS hospitals for training on July 1, 1981. Incoming residents were reminded that they could be released from their medical training programs if Congress agreed to terminate funding for the operation of PHS's hospitals. On June 24, 1981, the Ninth Circuit vacated the injunction issued by the district court. See Sailors Union of the Pacific, AFL/CIO v. Schweiker, No. 81-4295 (9th Cir. June 24, 1981).
 
 
 8
 On August 27, 1981, PHS advised all residents that subject to Congressional approval funds were being made available "to support interns and residents through June 30, 1982, whether these post-graduate educational positions (are) in PHS hospitals or transferred to private facilities." J.Exh.App. at 106-07. On September 18, 1981, plaintiffs were notified that their positions had been officially abolished, and on October 9, 1981, PHS was authorized to execute contracts covering residents' salaries through June 30, 1982.
 
 
 9
 Beginning in the spring of 1981, PHS attempted to place plaintiffs and other residents in other accredited residency programs. PHS was able to find positions for three plaintiffs-Drs. Jackson, Goss and Hamdallah. Drs. Jackson and Goss were placed in accredited orthopedic programs at Lincoln Hospital in New York, while Dr. Hamdallah was offered but did not accept a residency at Westchester County Medical Center. The PHS paid for Drs. Jackson's and Goss's training in accordance with the August 27 memorandum.
 
 
 10
 Plaintiffs Chu, Goss, Jackson and Lower were appointed as probationary commissioned officers in the reserve corps of the PHS. As such, their commissions could be terminated "at any time, as the President may direct." 42 U.S.C. § 209(a)(2) (1976). In addition, the regulations promulgated by the Secretary governing the termination of such reserve officers provide:
 
 
 11
 All individuals called to active duty in the PHS reserve corps are required to serve a three-year probationary period. During this period, the officer may be separated from active duty without cause, i.e., without entitlement to review by a board of officers, for reasons including, but not limited to, the following:
 
 
 12
 a. Abolishment of an officer's position as a result of personnel/budgetary limitations ....
 
 
 13
 Dep't of Health & Human Services, Commissioned Corps Personnel Manual, Subchapter CC 23.7, Instruction 1, § D(1)(a) (1981). Plaintiff Hamdallah is a PHS civil service employee in a position excepted from the competitive service. See 5 U.S.C. §§ 7501(1), 7511(b)(2)(A) (1976); 5 C.F.R. § 213.3116(b) (1981).
 
 
 14
 The District Court, relying on Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), and Bivens v. Six Unknown Named Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), determined that plaintiffs had a property interest "within the protection of the Fifth Amendment" in continuing their respective residencies. The District Court further determined that plaintiffs' claims exceeded $10,000[2] and that they had a status or contract right in their respective appointments for a term of years based on mutually explicit understandings. Because he nevertheless decided that it would be inappropriate to grant plaintiffs injunctive relief, Judge Brieant issued a declaratory judgment in plaintiffs' favor invoking the general federal-question jurisdiction of district courts. 28 U.S.C. § 1331(a) (1976); see Davis v. Passman, 442 U.S. 228, 234, 99 S.Ct. 2264, 2271, 60 L.Ed.2d 846 (1979).[3] Recognizing that "by reason of the Tucker Act, 28 U.S.C. § 1346(a), adjudication of plaintiffs' money damages must of necessity take place in the United States Court of Claims," the case was transferred to the Court of Claims pursuant to 28 U.S.C. § 1406(c).
 
 DISCUSSION
 
 15
 To claim a property interest in continued federal employment, plaintiffs must demonstrate a specific entitlement to their positions. See Arnett v. Kennedy, 416 U.S. 134, 152, 94 S.Ct. 1633, 1643, 40 L.Ed.2d 15 (1974); Cafeteria Workers v. McElroy, 367 U.S. 886, 896-97, 81 S.Ct. 1743, 1749, 6 L.Ed.2d 1230 (1961); Mazaleski v. Treusdell, 562 F.2d 701, 709 n.23 (D.C.Cir.1977); Smith v. Lehman, 533 F.Supp. 1015, 1019 (E.D.N.Y.), aff'd, 689 F.2d 342 (2d Cir. 1982). Entitlements are not created by the Constitution, but rather, are derived from the applicable statutes, regulations or contracts. See Goss v. Lopez, 419 U.S. 565, 572-73, 95 S.Ct. 729, 735, 42 L.Ed.2d 725 (1975); Bollow v. Federal Reserve Bank of San Francisco, 650 F.2d 1093, 1098 (9th Cir. 1981), cert. denied, --- U.S. ----, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982). This principle applies equally to plaintiffs Chu, Jackson, Goss and Lower, as probationary commissioned officers in the reserve corps of the PHS, see Sampson v. Murray, 415 U.S. 61, 81, 94 S.Ct. 937, 948, 39 L.Ed.2d 166 (1974), and to Hamdallah, as a noncompetitive PHS civil service employee, see Fiorentino v. United States, 607 F.2d 963, 967-68 (Ct.Cl.1979), cert. denied, 444 U.S. 1083, 100 S.Ct. 1039, 62 L.Ed.2d 768 (1980).
 
 
 16
 The pertinent statutes and regulations do not guarantee plaintiffs government support for the duration of their respective residencies. To the contrary, the PHS personnel manual makes clear that the residencies of plaintiffs Chu, Jackson, Goss and Lower could be terminated without cause in the event of a budget cutback. Moreover, the statute which authorized the appointment of these plaintiffs provides that their commissions could be terminated at any time. See 42 U.S.C. § 209(a)(2). This language cannot be construed to create a legitimate expectation of continued employment. See Yeghiayan v. United States, 649 F.2d 847, 852-53 (Ct.Cl.1981) (hiring statute which provides that a Foreign Service officer could be terminated "at any time" did not create a property interest in continued employment). Similarly, because Hamdallah held a noncompetitive civil service position, her position could also be terminated at any time, thereby negating any expectation of continued employment. See Fowler v. United States, 633 F.2d 1258, 1262 (8th Cir. 1980).
 
 
 17
 Plaintiffs persuaded the District Court that their property interest was derived from mutually explicit understandings between the parties. In essence, plaintiffs maintain that their respective letters of appointment constitute contracts establishing "a formal understanding that supports a claim of entitlement to continued employment." Brief in Response for Plaintiffs at 5. Mutually explicit understandings, however, do not "create a property interest for purposes of due process when they are contrary to the express provisions of regulations and statutes." Baden v. Koch, 638 F.2d 486, 492 (2d Cir. 1980); see Army & Air Force Exchange Service v. Sheehan, --- U.S. ----, ----, 102 S.Ct. 2118, 2123, 72 L.Ed.2d 520 (1982); United States v. Hopkins, 427 U.S. 123, 130, 96 S.Ct. 2508, 2512, 49 L.Ed.2d 361 (1976) (per curiam). As we have previously found, the statutes and regulations applicable herein do not create a property interest in a continued residency. Moreover, as Judge Brieant correctly noted, plaintiffs cannot rely on the March 27 memorandum to create a vested property interest in their respective residencies. Absent a showing of "affirmative misconduct," the Secretary was not estopped from retracting the statements made in the March 27 memorandum. We agree with Judge Brieant that plaintiffs have made no such showing. See Schweiker v. Hanson, 450 U.S. 785, 789-90, 101 S.Ct. 1468, 1471-1472, 67 L.Ed.2d 685 (1981).
 
 
 18
 Contractual claims for damages against the United States which exceed $10,000 fall within the exclusive jurisdiction of the Court of Claims. See 28 U.S.C. § 1346(a)(2) (Supp. II 1978); Army & Air Force Exchange Service v. Sheehan, supra, 102 S.Ct. at 2122 n.5; Cape Fox Corp. v. United States, 646 F.2d 399, 401-02 (9th Cir. 1981); Doe v. Civiletti, 635 F.2d 88, 95 (2d Cir. 1980). Accordingly, because we hold that plaintiffs' claim, if valid at all, is contractual in nature and exceeds $10,000, their exclusive remedy is in the Court of Claims. Thus, the District Court did not have jurisdiction to issue a declaratory judgment.
 
 
 19
 The judgment of the District Court is reversed insofar as it declared that plaintiffs have constitutionally protected property rights and enforceable contractual rights and affirmed insofar as it denied injunctive relief and transferred the action to the Court of Claims.
 
 
 
 *
 The Honorable John M. Cannella, Senior United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 Initially, nine individuals brought suit challenging the closing of the Staten Island PHS hospitals. Three plaintiffs, Drs. King, Koffler and Rahman, however, have secured residency positions in other institutions and accordingly have withdrawn their respective claims. Similarly, plaintiff Judith L. Shoner has voluntarily discontinued her claims. After oral argument, plaintiffs advised the Court that plaintiff Gregory Lower had accepted a residency position at Boston City Hospital. Boston City Hospital, however, has agreed only to provide Dr. Lower with a salary for one year of the remaining two years of his residency training
 
 
 [2]
 Judge Brieant based this determination on the testimony of Dr. John E. Marshall, Associate Administrator for Operations of the Health Services Administration of the PHS. Dr. Marshall testified that it costs approximately $30,000 per year to train a resident. See Transcript of Trial at 93
 
 
 [3]
 Plaintiffs claim that the District Court also had jurisdiction over their claims pursuant to the Administrative Procedures Act, 5 U.S.C. §§ 701-706 (1976) ("APA"). It is clear, however, that the APA does not in and of itself accord subject-matter jurisdiction to a district court to review agency decisions. See Califano v. Sanders, 430 U.S. 99, 107, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977); Estate of Watson v. Blumenthal, 586 F.2d 925, 933 (2d Cir. 1978)