**Sheryl JONES, M.D., et al.**

v.

**Richard SCHWEIKER, etc., et al.**

**Civ. A. No. 81–3288–EJB.**

United States District Court,
E.D. Louisiana.

Jan. 19, 1983.

Donald R. Mintz, Maureen O. Sullivan, New Orleans, La., for plaintiffs.

Ronald Fonseca, W. Glenn Burns, Asst. U.S. Attys., New Orleans, La., for defendants.

## MEMORANDUM OPINION

EDWARD J. BOYLE, Sr., District Judge:

This matter comes before the court for adjudication on the parties' joint stipulation of facts, depositions, and relevant affidavits and documents. Record Documents 27, 29.

The pertinent facts are easily gleaned from the parties' stipulations. Record Document 29. The ten plaintiffs in this suit are medical interns and residents who were scheduled to begin or to continue their medical training and employment at the United States Public Health Service Hospital in New Orleans (hereinafter the Hospital). Each of the plaintiff-physicians was a reserve commissioned corps officer in the Public Health Service.

Subsequent to each of the plaintiffs' application and selection for posts at the Hospital, President Reagan announced proposed cuts in funding for a variety of federal agencies and programs, including the Hospital. Plaintiffs then received a series of letters and mailgrams concerning their status. On or about March 18, 1981, each plaintiff received a memorandum from Dr. Alexander Washington, then Director of Medical Education at the Hospital, which advised that "if the Congress does legislate a phase-out, I expect, based on past precedent, that part of that legislation will provide for assistance to trainees in arranging a comparable training alternative. Until the legislative will is expressed neither I nor anyone else has the knowledge or authority to be more specific." Record Document 29, Joint Exh. 36.

On or about April 7, 1981, each of the plaintiffs received another memo from Dr. Washington, which advised that

(1) The Public Health Service is obligated to provide all students matched through the National Resident Matching Program with a one year PGY–1 training experience.

(2) The Bureau of Medical Services [a branch of the Health Services Administration within the Department of Health and Human Services] has the authority and responsibility to place residents and fellows in private residency programs when other Federal training programs are not available in that city. The students could continue as PHS hospital residents and be paid by the PHS.

Residents and interns currently in training will be supported in an approved program mutually acceptable to the trainee and the Public Health Service. Record Document 29, J.Exh. 37.

On or about May 22, 1981, plaintiffs received a mailgram from Dr. Leonard Bachman, then acting director of the Bureau of Medical Services. Plaintiffs were informed that the department's [DHHS] office of the general counsel has advised us that if the legislation described above [Omnibus Budget Reconciliation Act of 1981, Pub.L. No. 97–35, § 985, 95 Stat. 357 (1981) (hereinafter "the Act"] is enacted, the DHHS will be under no legal obligation to provide you with graduate education. Any contrary information you may have previously received was incorrect and should not be relied upon. Record Document 29, J.Exh. 46.

On or about June 19, 1981, Dr. Bachman sent another mailgram, instructing plaintiffs to report to the Hospital by July 1, 1981, pursuant to their original agreement, with the caveat that the availability for funds beyond September 30, 1981 was subject to congressional action and that the Hospital would make every effort to assist plaintiffs in making alternate arrangements. Record Document 29, Joint Stipulation at 9. See J.Exh. 45.

The Omnibus Budget Reconciliation Act of 1981 became law on August 13, 1981, pursuant to which the Hospital officially closed on October 30, 1981. All training programs, including the training programs of the plaintiffs, were terminated.

The instant suit, filed August 13, 1981, named as defendants: Richard Schweiker, former Secretary of the Department of Health and Human Services; Dr. Edward Brandt, Jr., Assistant Secretary of Health, Public Health Service; John H. Kelso, Acting Administrator, Health Services Administration; Dr. Leonard Bachman; Albert

Stapler, Director of the United States Public Health Service Hospital in New Orleans; the Department of Health and Human Resources; the United States Public Health Service; the United States Health Services Administration; and the Bureau of Medical Services.

Jurisdiction was alleged to rest upon the Administrative Procedure Act, 5 U.S.C. § 702, and the federal question provisions of 28 U.S.C. § 1331. Record Document 1 at 3. Plaintiffs argued that their cause of action sprang not only from the contracts with defendants, but also from the Fifth and Fourteenth Amendments to the United States Constitution.[1] Plaintiffs prayed for preliminary and permanent injunctions requiring defendants to comply with all terms and conditions of their contracts, alternatively, requiring defendants to provide plaintiffs with comparable training and compensation for the full period of their contracts and, in the further alternative, prohibiting closure of the Hospital and termination of plaintiffs' employment at the Hospital. Plaintiffs also prayed for a declaratory judgment that they possess valid and enforceable contractual rights against defendants.

Defendants have previously moved to dismiss the suit on the grounds that the action is an unconsented suit against the United States, the lack of subject matter jurisdiction and the failure of the complaint to state a claim on which relief can be granted. Fed.R.Civ.P. 12(b)(1) and 12(b)(6); Record Document 9. In response to this motion the court had determined that under the Tucker Act, 28 U.S.C. § 1346, the United States has waived sovereign immunity in district court only as to claims for damages *ex contractu* not exceeding $10,000.00, with the Court of Claims enjoying exclusive jurisdiction for claims in excess of that figure. In view of the equitable relief sought by plaintiffs and of the monetary value of each plaintiff's claim, which we find exceeds $10,000.00 (*see* Record Document 1 at 4–6;

Record Document 29, Transcript of Testimony of Dr. John E. Marshall, at 93, Deposition of Dr. Alexander Washington, at pp. 102–108; Joint Stipulation at pp. 1–3, 6, 9), we concluded we were without jurisdiction to entertain plaintiffs' claims, except possibly for those arising under the Fifth and Fourteenth Amendments of the United States Constitution. Record Document 15.

It was precisely the validity of these constitutional claims that was addressed by the Second Circuit in *Chu v. Schweiker,* 690 F.2d 330 (1982), a case involving New York counterparts of our plaintiffs who asserted claims similar to those we deal with. There, as here, plaintiffs argued that their contractual rights with PHS (predicated upon mutual explicit understandings) constituted vested property interests of which they had been deprived without due process of law. Record Document 1 at 9–10; Record Document 13 at 4–6. The Second Circuit ruled that such "mutual explicit understandings" do not create property interests when they are contrary to the expressed provisions of regulations and statutes. 690 F.2d at 334. That court further ruled that the March 27, 1981 memorandum stating that incoming residents would be supported in an approved program acceptable to the trainees and the Public Health Service did not create a vested property interest in the plaintiffs' respective residencies.

The plaintiffs here were advised by an April 7, 1981 memo that they would be similarly supported. *See* Record Document 29, J.Exh. 37.

Plaintiffs herein urge us not to follow *Chu* for two reasons. First, it is argued that *Chu* is not well-founded, inasmuch as (a) the proposition that mutually explicit understandings do not create a property interest for due process purposes when they are contrary to the express provisions of regulations and statutes does not flow from the cases cited therefor and (b) the Second Circuit pointed to the Commission Corps Personnel Manual (which provides for sepa-

---

1. Plaintiffs also cited defendants' failure to adhere to the procedures set forth in 42 U.S.C. § 248a(b)(2) for the closing of a United States Public Health Service Hospital. However, hospital closings required by the Act are exempt by the Act itself from such procedures.

ration of Corps Personnel without cause due to budgetary limitations), yet this provision was not promulgated until approximately April 3, 1981, after the plaintiffs had received the reassuring memo of March 18, 1981, from Dr. Washington.[2] *See* J.Exh. 36.

These arguments do not lessen the persuasive effect of *Chu* on our decision process. The short answer to plaintiffs' attempt to distinguish *Chu's* underlying authority is that the Fifth Circuit has expressly adopted the very rule whose operation plaintiffs would restrain, viz., that "mutual understandings" cannot create constitutionally protected property rights contrary to statutes and regulations. *See, e.g., Sims v. Fox,* 505 F.2d 857, 860–862 (5th Cir.1974), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 678 (1975); *see also Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). As the Government has pointed out in its Supplemental Response Memorandum, plaintiffs overlook the fact that the *Chu* court cited the Commission Corps Personnel Manual in addition to primarily citing 42 U.S.C. § 209(a)(2) which states in part that "Reserve commissions shall be for an indefinite period and *may be terminated at any time,* as the President may direct." (Emphasis added), *Chu* at pp. 332–333. 42 U.S.C. § 209(a)(2), alone, provides ample reason for concluding that reserve commissioned officers of the Public Health Service enjoy no vested property right in continued employment and training.

Second, plaintiffs would distinguish *Chu* insofar as the Fifth Circuit does not share the Second Circuit's view that § 702 of the Administrative Procedure Act[3] does not waive the bar of sovereign immunity for nonstatutory review of an agency's actions under § 1331. *See Sheehan v. Army and Air Force Exchange Service,* 619 F.2d 1132 (5th Cir.1980), *reversed,* —— U.S. ——, 102 S.Ct. 2118, 72 L.Ed.2d 520 (1982).

If, indeed, there is a split between the Second and Fifth Circuits in reading § 702, we nevertheless conclude that § 702 cannot apply to plaintiffs' cause of action. First, the Administrative Procedure Act, 5 U.S.C. § 701(b)(1)(A), explicitly excludes Congress from its purview. Inasmuch as the closing of the Public Health Service Hospital is not merely authorized, but ordered by Act of Congress, the relief sought by plaintiffs could not be granted without a *contra legem* judicial review. Second, because we find that plaintiffs' due process

---

**2.** In addition to the March 18, 1981 memo (J.Exh. 36), plaintiffs also received a memo dated April 7, 1981 (J.Exh. 37) which was substantially in the same language as the memo of March 27, 1981 sent to the plaintiffs in *Chu* (*see* Judge Brieant's unpublished opinion in *Chu, et al v. Schweiker, et al,* 81 Civ. 6045-CLB, S.D.N.Y., Feb. 5, 1982, at 8). In *Chu,* the plaintiffs urged estoppel based on the March 27, 1981 memo to them. Judge Brieant found the estoppel plea to be without merit. (*Id.* at 18). The Second Circuit found Judge Brieant's action to be proper, observing that "absent a showing of 'affirmative misconduct,' the Secretary was not estopped from retracting the statements made in the March 27 memorandum." *Chu,* at 334. While the plaintiffs here have not formally pled estoppel, their argument smacks of estoppel bar. As in *Chu,* here there also has been no showing of affirmative misconduct and the Secretary was at liberty to retract the statements made.

**3.** 5 U.S.C. § 702 provides:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided,* That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

claims are without merit, § 702 cannot be used as a back door avenue to evade the prohibitions of the Tucker Act against equitable relief for contract claims: "Nothing herein . . . confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. Finally, 28 U.S.C. § 1331(a) does not provide a waiver of sovereign immunity. *Beale v. Blount,* 461 F.2d 1133, 1138 (5th Cir.1972). *See also Sheehan,* supra, at 1139.

To summarize, we conclude that plaintiffs' constitutional claims are without merit. Plaintiffs are not entitled to injunctive relief. We are without jurisdiction to entertain the claims allegedly grounded in contract and the prayed for declaratory judgment. The plaintiffs' alleged contract claims, if valid at all, exceed $10,000.00 as to each plaintiff and must be pursued in the Court of Claims, to which, in the interest of justice, they should be transferred pursuant to the provisions of 28 U.S.C. § 1406(c).

Within five days counsel shall submit a judgment to be entered in accordance with the findings and conclusions contained herein.