**UNITED STATES of America, Plaintiff,**

**v.**

**Wesley Henry BARRY, Jr., M.D., Defendant.**

**Civ. A. No. 89V–329–N.**

United States District Court, M.D. Alabama, N.D.

Aug. 24, 1989.

Patricia Allen Conover, Asst. U.S. Atty., Montgomery, Ala., for the U.S.

Vanzetta Penn McPherson, Montgomery, Ala., for Barry.

## OPINION

VARNER, District Judge.

This cause is submitted on Plaintiff's Motion for Summary Judgment filed herein June 13, 1989; on Defendant's response thereto filed herein July 13, 1989; and on Plaintiff's reply filed herein August 3, 1989. This Court has jurisdiction of this cause pursuant to 28 U.S.C. § 1345.

## FACTS

The relevant facts necessary for a determination of this cause are not in dispute. Defendant, Wesley Henry Barry, Jr., M.D., applied for and received four years of scholarship assistance through the Public Health and National Health Service Corps Scholarship Training Program [hereinafter Program]. Emergency Health Personnel Act Amendments of 1972, Pub.L. No. 92–585, 86 Stat. 1290.[1] Pursuant to the Program, Defendant was obligated to serve one year on active duty in the Public Health Service [PHS] or as a civilian member of the National Health Service Corps [NHSC] for each year of scholarship assistance. Therefore, Dr. Barry was obligated to serve four years in one of the abovementioned qualified programs.

Upon his graduation from medical school, Dr. Barry began fulfilling his obligation while also completing his post-graduate surgical residency by serving in a PHS hospital in New Orleans, Louisiana.[2] In October, 1981, after completing three years of his service obligation, the New Orleans PHS was closed due to Congress' withdrawal of federal funding. Dr. Barry was unable to find another facility that would both allow him to complete his two remaining years of surgical training and qualify as an appropriate facility for completing his remaining one-year obligation under the Program. Subsequently, Dr. Barry sought and received a deferral until June 30, 1983, of the remaining one year of his service obligation.

In June, 1983, Dr. Barry was notified that he had been assigned to the Indian Health Service [IHS] to complete the remaining year of his service obligation.[3] Dr. Barry did not serve with the IHS, and, therefore, his remaining year of service obligation is yet unsatisfied.

In opposition to Plaintiff's Motion for Summary Judgment, Dr. Barry contends that he would have fulfilled his obligation if the New Orleans PHS had not been closed. Dr. Barry further contends that, if he is liable to the Plaintiff, he should be given credit for his three years of service already rendered in the New Orleans PHS. For the reasons hereinafter stated, this Court is unable to accept Dr. Barry's contentions.

## DISCUSSION

Dr. Barry apparently espouses the view that he was entitled to complete his

1. The statute and implementing regulations contained in 42 U.S.C. §§ 234, et seq., as in effect September 30, 1977, govern the present action. Defendant has not contended that the statute attached to Plaintiff's reply brief does not apply to this action.

2. 42 U.S.C. § 234(E) allows Program participants to receive credit toward their repayment obligation while completing medical training in a PHS facility.

3. Dr. Barry contends he was not given an opportunity to choose where he would complete the year remaining under his service obligation, while the Government contends that Dr. Barry was given an opportunity to choose between several alternatives in a letter dated January 1, 1983. Whether or not Dr. Barry was, in fact, given a choice is irrelevant for purposes of this Court's determination of the Motion for Summary Judgment.

obligation in a PHS facility. Dr. Barry's contentions are based on his assumption that he was entitled to complete his obligation in a PHS Hospital and, thus, the Plaintiff violated either his due process rights or his contractual rights. To prevail on his claim of a due process violation, Dr. Barry must show he was entitled to complete his obligation in a PHS Hospital and did not merely have an expectancy to be able to do so. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Dr. Barry has failed to meet this threshold requirement. Dr. Barry has not produced any statute, regulation or contract which would support his due process contention; he has not shown he has a constitutionally protected interest. *Roth,* supra, 408 U.S. at 569–571, 92 S.Ct. at 2705–2706; see also, *Goss v. Lopez,* 419 U.S. 565, 572–573, 95 S.Ct. 729, 735, 42 L.Ed.2d 725 (1975); *Arnett v. Kennedy,* 416 U.S. 134, 151–152, 94 S.Ct. 1633, 1642–43, 40 L.Ed.2d 15 (1974). Furthermore, Dr. Barry has not produced any evidence tending to show an understanding between himself and the Plaintiff in regard to completing his obligation in a PHS Hospital. The fact that there was no "mutually explicit understanding" negates Dr. Barry's claim of a property interest entitled to "due process protection". *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972).

Dr. Barry's second contention apparently rests on a contractual theory.[4] Dr. Barry seemingly suggests that the contracts he signed constituted a mutual understanding creating an entitlement and, thus, a protected interest. The law in regard to this claim is clear. There can be no "constitutionally protected property rights contrary to statutes and regulations." *Jones v. Schweiker,* 554 F.Supp. 1195, 1198 (E.D.La.1983); see, e.g., *Sims v. Fox,* 505 F.2d 857, 860–862 (5th Cir.1974), cert. den. 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 678 (1975). Title 42, U.S.C. § 209(a)(2) provides, in pertinent part:

> "Reserve commissions shall be for an indefinite period and may be terminated at any time * * *."

Therefore, Dr. Barry could not have had an entitlement, via mutual understanding, to continued employment in a PHS facility when the statute expressly provided otherwise, i.e., that his commission could be terminated anytime with or without cause. Two cases have expressly held that an individual is neither entitled to begin his training nor complete his training in a PHS Hospital. *Chu v. Schweiker,* 690 F.2d 330, 333 (2nd Cir.1982); *Jones,* supra, 554 F.Supp. at 1198. Therefore, Dr. Barry had no right to complete his service obligation in the New Orleans PHS Hospital. The ultimate disposition of this contention rests upon the legal interpretation of 42 U.S.C. § 234(f)(1), which provides in part:

> "If, **for any reason,** a person fails to complete an active duty service obligation under this section, he shall be liable for the payment of an amount equal to the cost of tuition and other educational expenses, and scholarship payments, paid under this section, plus interest at the maximum legal prevailing rate." [emphasis added].

Mr. Joseph B. Hayden, the Director of the Division of Health Services Scholarships [HSS], through affidavit, has stated that the HSS has never prorated debts incurred by defaulters in the Program who failed to completely satisfy their service obligation. This Court is required to accord "considerable weight" to the HSS' interpretation of the statute in question. *Chevron, U.S.A. v. Natural Resources Defense,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984).

> "The principle of deference to administrative interpretations 'has been consistently followed by this Court whenever decision as to the meaning or reach of a statute has involved reconciling conflicting policies, and a full understanding of the force of the statutory policy in the

4. Dr. Barry acknowledges the fact that he signed a contract for each year he received scholarship assistance. However, the contract in issue has not been provided this Court. Any contractual language Defendant could point to in support of his contention, however, would be in direct contradiction to the statute and, thus, not controlling.

given situation has depended upon more than ordinary knowledge respecting the matters subjected to agency regulations * * * [citations omitted].

'* * * If this choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned'" *Chevron*, supra, 467 U.S. at 844–845 [104 S.Ct. at 2782–83] [quoting *United States v. Shimer*, 367 U.S. U.S. 374, 382–383, 81 S.Ct. 1554, 1560, 6 L.Ed.2d 908 (1961)].

Congress has not provided for proration of the amount owing the Government based on years actually served. Congress has expressly provided for proration in other programs such as the Physician Shortage Area Scholarship Program. Comprehensive Health Manpower Training Act of 1971, Pub.L. No. 92–157, 85 Stat. 431. The successor program to the Public Health and National Health Service Corps Program, the National Health Service Corps Program, Health Professions Educational Assistance Act of 1976, Pub.L. No. 94–484, 90 Stat. 2243, provides for proration of an individual's obligation subject to a penalty for failure to fully complete the service obligation. 42 U.S.C. § 254*o* (b)(1). This Court, therefore, is led to the inescapable conclusion, based on the plain meaning of the statute, that Congress did not intend to give partial credit to those who did not fully satisfy their service obligation. This Court's decision regarding the proration issue is further reinforced by the deference which must be accorded the HSS' statutory interpretation. This Court is neither unmindful nor unsympathetic of the fact that the statute in question imposes a harsh result on those participants who do not fully complete their service obligation. Further, this Court realizes that a person who completes three years of service, such as Dr. Barry, is required to repay the Government the same amount as a participant who never attempted to satisfy his obligation. However, Congress has sought to deter, by means of this statute, premature departure of those required to serve in a qualified facility. Additionally, when the fact that these participants receive compensation for their services while fulfilling their obligation is taken into consideration, albeit not as much as if the participant were in private practice, the inequity that appears to result from the literal interpretation of 42 U.S.C. § 234(f)(1) is substantially negated.

Therefore, it is the opinion of this Court that Plaintiff's Motion for Summary Judgment is due to be granted. An Order and Judgment will be entered in accordance with this Opinion.

DONE.

ORDER AND JUDGMENT

In accordance with the Opinion entered in the above-styled cause on this date, it is ORDERED, ADJUDGED and DECREED by this Court:

1. That Plaintiff's Motion for Summary Judgment filed herein June 13, 1989, be, and the same is hereby, granted.

2. That Plaintiff, the United States of America, have and recover of Defendant, Wesley Henry Barry, Jr., M.D., the sum of $104,002.11 ($36,528.75 principal and $67,473.36 interest accrued through December 31, 1988), plus interest at the daily rate of $15.01 from and after January 1, 1989, to the date of this Judgment, plus interest from the date of this Judgment at the legal rate until paid in full.

3. That costs of this action are hereby taxed against the Defendant, for which execution may issue.

DONE.